**WISCONSIN STATE EMPLOYEES ASSOCIATION, COUNCIL 24, AFSCME, AFL-CIO, in its own behalf and in behalf of all its members; Marvin Kaukl, individually and in behalf of those similarly situated, Plaintiffs,**

v.

**WISCONSIN NATURAL RESOURCES BOARD, the Wisconsin Department of Natural Resources, and Daniel K. Taylor, Hubert Behnke, Arthur R. MacArthur, Charles F. Smith, John M. Potter, Gerald Rohlich and Russel G. Lynch, individually, and as members of the Natural Resources Board; Lester P. Voigt, individually, and as Secretary of the Department of Natural Resources; R. J. Smith, individually, and as Administrator of the Division of Fish, Game, and Law Enforcement within the Department of Natural Resources, Defendants.**

No. 68–C–143.

United States District Court
W. D. Wisconsin.

April 2, 1969.

Richard L. Cates, John H. Bowers, Madison, Wis., for plaintiffs.

Laurence W. Hall, Madison, Wis., for defendants.

OPINION, ORDER AND JUDGMENT

Before FAIRCHILD, Circuit Judge, and DOYLE and GORDON, District Judges.

JAMES E. DOYLE, District Judge.

Plaintiffs have brought this action to challenge § 16.30, Wis.Stats., and the

"Policy on Political Activities of Department Personnel" (hereinafter the "Policy") of the Wisconsin Department of Natural Resources (hereinafter the Department). They seek a declaration that the statute and the "Policy" violate the Constitution of the United States, and an injunction against their enforcement.

Jurisdiction is invoked, pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1343 (3) and (4). Jurisdiction is present. Defendants, acting under color of state law, have undertaken to deprive plaintiff Kaukl of certain freedom of action. It remains to be determined whether this freedom of action is a right, privilege, or immunity secured to him by the Constitution or Laws of the United States. This three-judge court has been convened pursuant to 28 U.S.C. §§ 2281, 2284.[1]

Plaintiffs assert two causes of action with respect to § 16.30 and the Departmental "Policy" (both of which prohibit certain political activities by employees of the Department): (1) that these provisions deprive them of the right of political expression protected by the First and Fourteenth Amendments; and (2) that these provisions deprive them of the equal protection of the laws in violation of the Fourteenth Amendment.

Plaintiff, Wisconsin State Employees Association, Council 24, AFSCME, AFL–CIO (hereinafter WSEA), is a labor organization with its principal office located at 119 Monona Avenue, Madison, Wisconsin. Plaintiff WSEA alleges that, through some 61 local affiliates, it represents approximately 9000 employees of the State of Wisconsin in the classified civil service concerning employee rights and conditions of employment. Plaintiff WSEA undertakes to sue in its own behalf and in behalf of its members, pur-

---

1. The constitutionality of the Department's "Policy", as well as the constitutionality of § 16.30, is an issue appropriate for determination by a three-judge court, pursuant to 28 U.S.C. §§ 2281, 2284. The policy provision is an administrative order of state-wide application, representing state policy. See Oklahoma Natural Gas Co. v. Russell, 261 U.S. 290, 292, 43 S. Ct. 353, 67 L.Ed. 659 (1922); Gilmore v. Lynch, 400 F.2d 228, 230 (9th Cir. 1968); cf. Hatfield v. Bailleaux, 290 F. 2d 632, 635 (9th Cir.), cert. denied 368 U.S. 862, 82 S.Ct. 105, 7 L.Ed.2d 59 (1961).

suant to Rule 23(a) and Rule 23(b) (2), Federal Rules of Civil Procedure.

Plaintiff Kaukl is a citizen of the United States and a resident of Wisconsin. He is employed by the Department as a poultryman at the game farm, is classified as a Poultryman I in the classified civil service of the state, and is a member of WSEA Local 487. He undertakes to sue in his own behalf and in behalf of all others similarly situated, pursuant to Rule 23(a) and Rule 23(b) (2).

Defendants are the Department; the Wisconsin Natural Resources Board (hereinafter the Board), the policy making body of the Department; and members of the Board and certain officers of the Department, officially and individually.

It appears from the complaint that on July 9, 1968, plaintiff Kaukl filed nomination papers as a Democratic candidate for the office of Sheriff of Columbia County. Thereafter, outside of working hours, he campaigned throughout the county and distributed leaflets. He solicited assistance and contributions from the County Democratic Party. The complaint alleges that such activities are claimed by the Department to fall within the scope of § 16.30 and the Department's "Policy". § 16.30 provides:

"No person holding a position in the classified civil service shall directly or indirectly solicit or receive or be in any manner concerned with soliciting or receiving any assistance or subscriptions or contributions for any political party or any political purpose whatsoever. No person shall orally or by letter solicit or be in any manner concerned in soliciting any assistance, subscription, or support for any political party or purpose whatsoever from any person holding any position in the classified civil service. No person holding any position in the classified civil service shall during the hours when he is on duty engage in any form of political activity calculated to favor or improve the chances of any political party or any person seeking or attempting to hold political office, nor shall he engage in any political activity when not on duty to such an extent that his efficiency during working hours will be impaired or that he will be tardy or absent from his work. Any violation of the provisions of this section shall be adequate grounds for dismissal."

The Department's "Policy" provides:

"It is the policy of the Conservation Commission that all department personnel, permanent or seasonal, while on the payroll, adhere to the requirements of Section 16.30 of the Wisconsin Statutes which relates to political contributions and activities. Each employe shall also refrain from political controversy which might lead to a reasonable belief that he was subverting his position and his authority to further his political aims, and no employe shall run for any partisan elective office, or loan or use any equipment or materials belonging to the Department for political purposes.

"The exercise of the right to decide for one's self, his advocacy of men and measures, and the right of suffrage, is denied no one. No restriction shall be placed on an employe's support or opposition to any conservation bill in the State Legislature except that no employe of the Department shall publicly oppose in any way any conservation bill which the Commission supports, or support in any way any conservation bill to which the Commission is opposed, according to their official action. Also, no employe shall appear on a conservation measure before any legislative body without the approval of the Director."

On July 30, 1968, the Supervisor of the Poynette Game Farm (hereinafter the Supervisor) informed plaintiff Kaukl that in light of the statute and the "Policy" the following choices were open to him: he could withdraw from the race for sheriff; he could take a leave of absence from his job; or he could resign. This conversation was confirmed in a letter from the Supervisor to plaintiff Kau-

kl, dated August 2, 1968. On August 5, 1968, the Supervisor again met with plaintiff Kaukl to advise him further of the policy of the Department. Plaintiff Kaukl was at that time advised that it would not be necessary for him to resign or withdraw, but that he should file a grievance. He did not file a grievance. He inquired of the Attorney General of Wisconsin about the legality of a state civil service employee running for the office of sheriff. On August 6, 1968, plaintiff Kaukl was advised by letter from the Attorney General that an employee in the Wisconsin classified civil service could run for public office without taking a leave of absence or resigning, as long as all campaigning and political activity were carried on outside working hours. On August 16, 1968, the Board met and adopted a resolution affirming the Department's "Policy". On August 29, 1968, plaintiff Kaukl was notified that, effective September 1, 1968, the Department was placing him on involuntary leave of absence, without pay, until November 6, 1968, or until his candidacy was otherwise terminated.

Thereupon, this action was instituted to declare unconstitutional § 16.30 and the Department's "Policy", and to enjoin their enforcement. On September 18, 1968, a temporary restraining order was entered restraining defendants from enforcing § 16.30 or the Department policy against plaintiff Kaukl by discharging him, by placing him on leave without pay, or by imposing any penalty or punishment on him solely for the reason that he was a candidate or continued to be a candidate for public office, so long as said candidacy did not interfere with the duties of his employment.

Plaintiffs have filed a motion for summary judgment on their first cause of action. Defendants have filed a motion to dismiss the action and a "motion for summary judgment on the pleadings".

Defendants' motion to dismiss, as amended, contains four parts. The first part seeks the dismissal of the action as to plaintiff WSEA on the ground that it cannot properly bring this action in its own behalf and in behalf of its members under Rule 23. Defendants contend that WSEA is not a member of the class which it seeks to represent; that the entire membership of WSEA does not constitute a proper "class" within the meaning of Rule 23; and that there has been no showing that any of the individual members of WSEA has any present interest in this controversy.

■ This segment of defendants' motion to dismiss appears to raise several issues: (1) the capacity of WSEA to bring this action; (2) the standing of WSEA to assert the rights of its individual members; (3) the ripeness of the issue which WSEA raises in behalf of its members; and (4) the propriety of raising this issue in a class action in which the class includes the entire membership of WSEA. These issues are not easily separable.

Rule 17(b) provides in pertinent part:

"(b) Capacity to Sue or Be Sued. * * * In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held, except (1) that a partnership or other unincorporated association, which has no such capacity by the law of such state, may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States * * *."

Additionally, under Wisconsin law a labor union has legal capacity to sue in its own behalf when its rights are invaded. Trustees of Wisconsin State Federation of Labor v. Simplex Shoe Mfg. Co., 215 Wis. 623, 641, 256 N.W. 56 (1934).

However, the rights which have allegedly been invaded here are the rights of the members of WSEA, not those of WSEA as an organization. The right which has allegedly been violated is the right of political expression by individuals, not the right of political expression by WSEA. Moreover, it is alleged that this right is threatened by loss of employment; the threatened employment

is employment of individuals, not employment of WSEA.

■ There is authority, however, for the proposition that a labor union has the capacity to sue in behalf of its members to vindicate their rights when the labor organization has a particular interest in the exercise of those rights. See United Electrical, Radio & Machine Workers of America, CIO v. Baldwin, 67 F.Supp. 235, 239 (D.Conn.1946); International Longshoremen's & Warehousemen's Union v. Ackerman, 82 F. Supp. 65, 122–123 (D.Hawaii, 1948), rev'd on other grds. 187 F.2d 860 (9th Cir.), cert. denied 342 U.S. 859, 72 S. Ct. 85, 96 L.Ed. 646 (1951); cf. International News Service v. Associated Press, 248 U.S. 215, 233, 39 S.Ct. 68, 63 L.Ed. 211 (1918); Alston v. School Board of City of Norfolk, 112 F.2d 992 (4th Cir.), cert. denied 311 U.S. 693, 61 S.Ct. 75, 85 L.Ed. 448 (1940); but see Hague v. Committee for Industrial Organization, 307 U.S. 496, 514, 527, 59 S.Ct. 954, 83 L.Ed. 1423 (1939). More recent cases have approached this question in the context of standing to assert the rights of another. Thus, although it is generally recognized that in order to litigate a constitutional question one must be asserting a right in his own behalf, Tileston v. Ullman, 318 U.S. 44, 46, 63 S.Ct. 493, 87 L.Ed. 603 (1943), when an organization has a particular interest in the exercise of the right in issue, or when the right might not otherwise be vindicated, the organization will be accorded standing to assert the right on behalf of its members. See NAACP v. Button, 371 U.S. 415, 428, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); Louisiana ex rel. Gremillion v. NAACP, 366 U.S. 293, 296, 81 S.Ct. 1333, 6 L.Ed.2d 301 (1961); Bates v. City of Little Rock, 361 U.S. 516, 523, n. 9, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960); NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 458–460, 78 S. Ct. 1163, 2 L.Ed.2d 1488 (1958); Smith v. Board of Education of Morrilton School District No. 32, 365 F.2d 770, 776–777 (8th Cir. 1966); cf. Barrows v. Jackson, 346 U.S. 249, 257, 73 S.Ct.

1031, 97 L.Ed. 1586 (1953); Pierce v. Society of the Sisters of the Holy Names of Jesus and Mary, 268 U.S. 510, 535, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); Norwalk CORE v. Norwalk Redevelopment Agency, 395 F.2d 920 (2d Cir., 1968).

■ The factors present in those cases are not present here. The rights sought to be asserted are not being exercised in order directly to advance the interests of the organization. See United Electrical, Radio & Machine Workers of America, CIO v. Baldwin, *supra*; International Longshoremen's & Warehousemen's Union v. Ackerman, *supra*. This is not a case in which an attempt by individual members to assert their rights, as distinguished from an attempt by the union, might result in forfeiture of those rights. See Louisiana ex rel. Gremillion v. NAACP, *supra*; Bates v. City of Little Rock, *supra*; NAACP v. Alabama ex rel. Patterson, *supra*. Nor is this a case in which the organization is attempting to litigate the scope of constitutional protection afforded its members to act collectively. See NAACP v. Button, *supra*. It is not alleged that this is a case in which there exists a significant element of deterrence through fear of reprisals if individual members attempt to assert their rights. See Smith v. Board of Education of Morrilton School District No. 32, *supra*. Nor does there appear to be the likelihood that WSEA itself will be adversely affected through diminished membership and financial support if its members are denied certain rights of political expression. See NAACP v. Alabama ex rel. Patterson, *supra*; cf. Pierce v. Society of the Sisters of the Holy Names of Jesus and Mary, *supra*.

Plaintiffs contend that other factors support the standing of WSEA to assert the rights of its members: (1) the conduct of defendants affects rights of WSEA's members which relate to their rights and conditions of employment and WSEA is vitally interested in the outcome of the controversy; (2) WSEA's members are public employees, forbidden

to strike, and allowed to bargain collectively within only a limited area and the only manner in which WSEA can provide an effective program for its members is to protect their right to political activity; and (3) the individual members of WSEA cannot often afford to engage in litigation of this kind.

Plaintiffs contend that WSEA has standing to assert the rights of its members because it has "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); see Flast v. Cohen, 392 U.S. 83, 99, 88 S.Ct. 1942, 20 L.Ed. 2d 947 (1968).

This is not a case in which the union undertakes to sue on behalf of one of its members who is engaged in a concrete adversary conflict with a public authority involving a sharply defined issue; Kaukl is himself a plaintiff; it is unnecessary for WSEA to sue on his behalf. Nor is it alleged that the union undertakes to sue on behalf of several of its members who are engaged in such a conflict or who are imminently threatened with such a conflict.

The only allegation with respect to the interests of WSEA and its members is as follows:

"WSEA provides assistance to its members and its locals on a wide variety of matters which involve employee rights and conditions of employment. Participation in partisan political activities and running for a partisan public office are matters of employee rights and of conditions of employment and are of vital interest and concern to the WSEA, its locals and its members.

"WSEA and its members have an interest in and are aggrieved by the actions of the defendants with respect to the candidacy of plaintiff Kaukl for the office of Sheriff."

There is no allegation that any specific member other than Kaukl has participated, or has a specific intention to participate, in activities which do or may jeopardize his employment by virtue of § 16.30 or the "Policy". It is merely implied that the entire membership of WSEA desires to participate in unspecified forms of political activity.

■ "A proper party is demanded so that federal courts will not be asked to decide 'ill-defined controversies over constitutional issues,' United Public Workers v. Mitchell, 330 U.S. 75, 90, [67 S.Ct. 556, 564, 91 L.Ed. 754] (1947), or a case which is of 'a hypothetical or abstract character', Aetna Life Insurance Co. [of Hartford, Conn.] v. Haworth, 300 U.S. 227, 240, 57 S.Ct. 461, 463, 81 L.Ed. 617 (1937)." Flast v. Cohen, *supra* at 100, 88 S.Ct. at 1952. WSEA is not a "proper party" in this sense. Its suit on behalf of all of its members gives rise to "ill-defined controversies" of "a hypothetical or abstract character".

Accordingly, we conclude that plaintiff WSEA lacks standing in this case, and that the issues WSEA seeks to raise—beyond that raised by Kaukl himself—are not ripe for adjudication.

Defendants' motion to dismiss WSEA as a party plaintiff is hereby granted.

The remaining grounds for dismissal set forth in defendants' motion to dismiss seek the dismissal of the action in its entirety and as to both plaintiffs.

■ As the first ground for dismissal of the action in its entirety, defendants assert that plaintiff Kaukl has remedies available to him in the courts of the state, and that this court should decline jurisdiction and defer to the state courts, allowing them to determine the validity of the state statute and state policy. Plaintiff Kaukl seeks a declaration that § 16.30 and the Department's "Policy" are invalid because of vagueness and overbreadth, as well as injunctive relief against their enforcement. The abstention doctrine is inapplicable to a request for a declaratory judgment that a state statute is over-

broad. Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). In Zwickler v. Koota, *supra* at 254, 88 S.Ct. at 399, it was held that when declaratory as well as injunctive relief is requested "a federal district court has the duty to decide the appropriateness and the merits of the declaratory request irrespective of its conclusion as to the propriety of the issuance of the injunction." It is not appropriate, therefore, to refrain from entering a declaratory judgment and to allow the state courts to determine the validity of the provisions involved here.[2]

The second ground asserted by defendants for dismissing the action in its entirety is that the restoration of plaintiff Kaukl to his position as a permanent employee, with all rights and privileges thereof, as of September 1, 1968, renders the issue raised by plaintiffs moot.

In their reply brief, defendants appear to concede that the issue is not moot:

"* * * [T]he court's decision indicates that our action was a conditional reinstatement which was not the absolute reinstatement required, hence the issue of constitutionality of this statute and policy is still present. Kaukl was not reinstated under the board's action but under the court's ruling."

The temporary restraining order entered herein provides in pertinent part:

" * * * [I]t is hereby ordered that, pending the further order of this court, the defendants, their agents, servants, employees, and all persons acting in concert or participation with them, are restrained from enforcing Section 16.30, Wis.Stat., against plaintiff Kaukl, and from enforcing the policy statement of January 13, 1956, by discharging the plaintiff Kaukl, or by placing him on leave without pay, or by imposing any penalty or punish-

ment upon him solely for the reason that he is a candidate, or that he continues to be a candidate, for public office, so long as such candidacy does not interfere with his duties as an employee of the defendant Board; and

"It is hereby further ordered that the defendants restore the plaintiff Kaukl to his position as a permanent employee, with all rights and privileges thereof, as of September 1, 1968, subject only to the condition that he be considered to have been on annual leave status from September 1, 1968, through September 14, 1968."

In light of the temporary restraining order, it does not appear that defendants could take action against Kaukl for past activities if the action were to be dismissed. However, defendants do appear to intend to take action against any employee who engages in the same activity in which plaintiff Kaukl engaged.

■ Even a voluntary cessation of the challenged action does not necessarily render a case moot, particularly where the danger exists that the actions complained of will be reinstituted if the action is dismissed. See Gray v. Sanders, 372 U.S. 368, 375–376, 83 S.Ct. 801, 9 L. Ed.2d 821 (1963); United States v. W. T. Grant Co., 345 U.S. 629, 632, 73 S.Ct. 894, 97 L.Ed. 1303 (1953); Walling v. Helmerich & Payne, 323 U.S. 37, 43, 65 S.Ct. 11, 89 L.Ed. 29 (1944).

We note the unlikelihood of having a controversy involving candidacy for elective office adjudicated if strict notions of ripeness and mootness are adhered to in such situations.

■ It is not appropriate to dismiss the action on the ground that the reinstatement of plaintiff Kaukl has rendered the issue moot.

■ The final ground asserted by defendants for dismissal of the action in its entirety is that the placement of plaintiff Kaukl on involuntary leave without pay was proper because he was,

2. The declaration which we make hereinafter renders it unnecessary to decide whether to abstain from granting injunctive relief.

at the time of his candidacy, subject to the provisions of the Hatch Act, 53 Stat. 1147 (1939), as amended, 54 Stat. 767 (1940), 80 Stat. 404 (1966), 5 U.S.C. §§ 1501 et seq.[3]

5 U.S.C. § 1502(a) provides in pertinent part:

"(a) A State or local officer or employee may not—* * *

"(3) take an active part in political management or in political campaigns."

"State or local officer or employee" is defined by 5 U.S.C. § 1501(4). That section provides in pertinent part:

"(4) 'State or local officer or employee' means an individual employed by a State or local agency whose principal employment is in connection with an activity which is financed in whole or in part by loans or grants made by the United States or a Federal agency, but does not include—

"(A) an individual who exercises no functions in connection with that activity * * *."

5 U.S.C. § 1506 subjects a state or local agency to withholding of its federal grant or loan if an employee violates these provisions and is not removed from his position.

Defendants have submitted an uncontradicted affidavit that plaintiff Kaukl engaged in a federally financed project in January, 1965, for a total of 68 hours, in December, 1965, for a total of 98 hours, in January, 1966, for a total of 36 hours, in January, 1967, for a total of 64 hours, and in January, 1968, for a total of 70 hours. There is nothing in the present record which indicates that defendants relied on §§ 1501, 1502, and 1506 in placing plaintiff Kaukl on involuntary leave. Nor would those provisions be applicable to plaintiff Kaukl if defendants had so relied. The last time at which he participated in a government project was in January, 1968, several months prior to the time of his candidacy for sheriff. Surely the effect of having engaged in a federal project during a course of employment does not follow an employee indefinitely into the future.

We conclude that plaintiff Kaukl was not subject to the provisions of the Hatch Act when he became a candidate for sheriff or at any time during his candidacy.

For the reasons set forth herein, defendants' motion to dismiss Kaukl as a party plaintiff is hereby denied.

 The complaint alleges that § 16.-30 and the Department's "Policy" are unconstitutional in that each is vague and overbroad, sweeping within its coverage activity which is protected by the First and Fourteenth Amendments to the Constitution of the United States.

From the exhibits which are attached to the complaint it does not appear that § 1630 was relied upon by defendants in their decision to place plaintiff Kaukl on involuntary leave without pay for his activity as a candidate for sheriff. It appears that only the Department's "Policy" was relied upon. The memorandum informing plaintiff Kaukl that he was being placed on involuntary leave without pay states in pertinent part:

"Your continued candidacy for Sheriff of Columbia County, a partisan office, is in violation of the Board policy on political activities of Department personnel.

* * * * * *

"Effective September 1, 1968, the Department is placing you on leave of

---

3. Because it might be considered that the assertion in defendants' motion to dismiss, that the placing of plaintiff Kaukl on involuntary leave was proper under the "Hatch Act", would "involve the enforcement, operation or execution of an Act of Congress", the notice of hearing was directed to the Attorney General of the United States and the United States Attorney for the Western District of Wisconsin as well as to the Governor and Attorney General of the State of Wisconsin and to counsel for the parties of record, pursuant to 28 U.S.C. § 2284(2).

absence, without pay, and relieving you of your duties and responsibilities associated with the Department until November 6, 1968, or until your candidacy for partisan political office is otherwise terminated. *This action is taken pursuant to the requirements of the policy on political activities of Department personnel of the Natural Resources Board, affirmed August 16, 1968,* and the provisions of Wisconsin Administrative Code, Pers. 18.05." (Emphasis added.)

There is no reference to § 16.30. Wisconsin Administrative Code, Pers. 18.05 merely sets forth the procedure for granting an employee leave without pay.

Moreover, it appears from an examination of the Department's "Policy" that the prohibition against running for a partisan office is considered apart from the requirements of § 16.30. The first paragraph of said policy states:

"It is the policy of the Conservation Commission that all department personnel, permanent or seasonal, while on the payroll, adhere to the requirements of Section 16.30 of the Wisconsin Statutes which relates to political contributions and activities. Each employe shall also refrain from political controversy which might lead to a reasonable belief that he was subverting his position and his authority to further his political aims, and no employe shall run for any partisan elective office, or loan or use any equipment or materials belonging to the Department for political purposes."

The words "shall also" indicate that the requirements of the second sentence are in addition to, and not included within, the requirements of the first sentence.

Two references to § 16.30 by Department personnel appear in the present record.

The August 29, 1968, memorandum informing plaintiff Kaukl of the Department's action makes reference to an August 16, 1968, affirmation of the "Poli-

cy". That affirmation had been in the form of the following motion:

"Therefore, I move the Board affirm the existing Board policy on political activities of Department personnel, and that it instruct the Secretary to reacquaint Department personnel with its provisions and the Hatch Act provisions and to take such action as he finds necessary to effectuate their purpose, including placing this employe on leave of absence on the date of filing nomination papers or other evidence of his candidacy."

Although the reference to "the Hatch Act provisions" may have been intended as a reference to § 16.30, it does not indicate that the action of the Department in Kaukl's case was based on any authority other than that stated in the August 29 memorandum received by plaintiff Kaukl.

The only other reference by a member of the Department to § 16.30 which appears in the present record is in the August 2, 1968, letter to plaintiff Kaukl from his supervisor. That letter states in part:

"My review of this situation suggests that it is quite easy for a person running for political office to find himself in violation of Section 16.30, Wisconsin Statutes. Further, we have what was earlier a Wisconsin Conservation Commission policy, now adopted as a Natural Resources Board Policy, that prohibits Department employees from certain political activities including candidacy for a partisan office."

The analysis of the situation by a Department member who is neither an officer of the Department nor a member of the Board in no way indicates the basis of the action taken by the Department several weeks later.

It appears, therefore, that the basis for the action taken by the Department in placing plaintiff Kaukl on involuntary leave was solely the "Policy" and that § 16.30 was not relied on.

The issue thus arises whether, on the basis of the present record, plain-

tiff Kaukl has standing to attack § 16.30. There has been no actual enforcement, nor is there threatened enforcement, of § 16.30.

Plaintiffs contend that even in the absence of actual or threatened enforcement, one has standing to challenge a statute on the grounds that it invades First Amendment freedoms by reason of vagueness and overbreadth. There is some authority for this proposition. See Heckler v. Shepard, 243 F.Supp. 841, 844 (E.D.Idaho, 1965) (three-judge court), citing Cramp v. Board of Public Instruction, 368 U.S. 278, 82 S.Ct. 275, 7 L.Ed. 2d 285 (1961); Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964); and Dombrowski v. Pfister, *supra*. None of the cases cited for this proposition in Heckler v. Shepard, *supra*, however, extends the rules of standing sufficiently far to provide a footing for an attack on § 16.30 by plaintiff Kaukl. In each of these cases the plaintiff had been confronted with a certain and immediate prospect of injury as a result of the challenged provisions. In Cramp v. Board of Public Instruction, *supra*, and Baggett v. Bullitt, *supra*, the injury definitely threatened was dismissal from employment for failure to execute a loyalty oath. In Dombrowski v. Pfister, *supra*, plaintiffs had been continually threatened with prosecution pursuant to the challenged provisions; shortly after the convening of the three-judge court which heard the initial application for relief, evidence was submitted to a grand jury looking to indictments of the individual plaintiffs under the challenged provisions; after the decision of the three-judge court and prior to the decision of the Supreme Court, indictments were returned against the individual plaintiffs under the challenged provisions.

In Cramp v. Board of Public Instruction, *supra*, plaintiff did allege that he could truthfully execute the challenged loyalty oath. The vagueness of the provisions, however, rendered the oath subject to possible differing interpretations by prosecuting authorities. A conclu-

sion that an affiant had not truthfully executed the oath would subject him to criminal prosecution for perjury. In addition, the oath was retrospective in application, rendering the affiant's dilemma particularly difficult and unfair.

In the present situation, plaintiff Kaukl is not threatened with any immediate injury as a result of § 16.30. In fact, those political activities in which plaintiff Kaukl has so far been engaged have triggered no application of § 16.30. We conclude that plaintiff Kaukl has no standing to challenge the constitutionality of § 16.30.

All that remains is the "Policy". The complaint attacks the "Policy" as both vague and overbroad. The prohibition that "no employee shall run for any partisan elective office" is certainly not vague. Nor can plaintiff Kaukl attack the policy for overbreadth since the provision which he is charged with violating is clearly severable from the remainder of the policy. The rule that one has standing to challenge the validity of a statute or regulation by invoking hypothetical applications of it does not allow him to attack sections wholly distinct from that being applied to him.

The sole issue squarely posed is whether the relinquishment of the right to run for partisan political office can constitutionally be made a condition of public employment.

In United Public Workers v. Mitchell, *supra*, the United States Supreme Court held that the relinquishment of the right to serve as a ward executive committeeman of a political party, to be politically active at the polls on election day, and to serve as a paymaster for the services of other party workers could constitutionally be made a condition of public employment. While there may be some dispute as to whether active candidacy for partisan office by a public employee is somewhat more or somewhat less dangerous to the public service than service as a ward executive committeeman, poll worker, and paymaster of a political

party, it is clear that these are comparable activities. United Public Workers v. Mitchell, *supra*, is controlling here.

Plaintiffs argue forcefully that the rationale of United Public Workers v. Mitchell has been undermined by the development of constitutional doctrine in this area. Much of this argument is concerned with the development of the doctrines of vagueness and overbreadth. This development does not affect this case since the discrete section of the "Policy" involved here is neither vague nor overbroad.

Plaintiffs also contend that the major premise of United Public Workers v. Mitchell, *supra*, was that public employment was a privilege and could be conditioned upon the surrender of constitutional rights. This premise, the argument runs, has since been rejected. See *e. g.*, Keyishian v. Board of Regents of the University of the State of New York, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967).

 Nevertheless, the decision in United Public Workers v. Mitchell, *supra*, has never been questioned by a federal court. Plaintiffs cite several state court decisions which have struck down restrictions on the First Amendment rights of public employees. See Minielly v. State of Oregon, 242 Or. 490, 411 P.2d 69 (1966); Bagley v. Washington Township Hospital District, 65 Cal. 2d 499, 55 Cal.Rptr. 401, 421 P.2d 409 (1966); Fort v. Civil Service Commission of the County of Alameda, 61 Cal. 2d 331, 38 Cal.Rptr. 625, 392 P.2d 385 (1964); DeStefano v. Wilson, 96 N.J. Super. 592, 233 A.2d 682 (1967); City of Miami v. Sterbenz, 203 So.2d 4 (Fla. 1967); contra, Johnson v. State of Minnesota Civil Service Dept., 157 N.W.2d 747 (Minn.1968). None of these cases, however, involved a restriction as narrowly drawn as that which plaintiff Kaukl violated. In any event, this court has the duty to follow a governing decision of the Supreme Court unless that decision has been clearly eroded by subsequent decisions which dictate a contrary result. See United States v. Chase,

281 F.2d 225, 230 (7th Cir., 1960); Rocha v. Immigration & Naturalization Service, 351 F.2d 523, 524 (1st Cir., 1965), cert. denied 383 U.S. 927, 86 S. Ct. 930, 15 L.Ed.2d 847 (1966); United States v. Miller, 316 F.2d 81, 83 (6th Cir.), cert. denied 375 U.S. 935, 84 S. Ct. 335, 11 L.Ed.2d 267 (1963), rehearing denied 375 U.S. 989, 84 S.Ct. 520, 11 L.Ed.2d 476 (1964).

 We conclude that the relinquishment of the right to run for partisan political office can constitutionally be made a condition of public employment.

Accordingly, defendants' motion for summary judgment is hereby granted and plaintiffs' motion for summary judgment on their first cause of action is hereby denied.