Joseph **ELDER**, for himself jointly and severally and for all others similarly situated, Plaintiff,

v.

Calvin L. **RAMPTON**, Governor of the State of Utah, et al., Defendants.

No. C 121–72.

United States District Court, D. Utah, C. D.

Dec. 19, 1972.

**560**

——◆——

Wendell E. Bennett, Strong & Hanni, Salt Lake City, Utah, for plaintiff.

H. Wright Volker, Asst. Atty. Gen., Salt Lake City, Utah, Vernon B. Romney, Atty. Gen., and Robert B. Hanson, Deputy Atty. Gen., on the brief, for defendants.

Before LEWIS, Chief Judge, BARRETT, Circuit Judge, and ANDERSON, District Judge.

## OPINION AND ORDER

### PER CURIAM.

Joseph Elder was an appointed employee of the State of Utah serving as deputy state auditor. On May 10, 1972, he filed his candidacy for the partisan elective position of state auditor. Thereupon, defendant Preece offered Elder a leave of absence, which was declined, and then dismissed him in apparent compliance with Utah's so-called Little Hatch Act and the regulations promulgated thereunder which purport to limit the political activities of certain state employees. Utah Code Ann. § 67–13–13 (1968);[1] Merit System and Per-

---

[1] This section provides:

Political activities of employees—Provisions of rules limiting activities—Hatch Act not affected.—Except as otherwise provided by law or by rules and regulations promulgated hereunder for federally aided programs, the following provisions shall apply with regard to political activity of employees for all grades and positions in the merit system:

(a) The state director of personnel shall promulgate rules, subject to the approval of the governor, to provide for limitations upon the political activities of state officers or employees covered by the merit system. These rules shall be drafted and interpreted to protect the officer or employee from political exploitation or abuse and to allow individual state officers and employees the broadest amount of personal political participation consistent with loyal service to their superiors in state government.

The rules shall incorporate, among others, the following provisions:

(1) No officer or employee covered by the merit system while in a pay status shall be a state or federal officer in any political party organization, or in any state-wide political campaign. Such officer or employee may be an officer or a delegate in a political party organization at a county or inferior level or a delegate at a state or national level.

(2) No officer or employee covered by the merit system shall be a candidate for any political office, provided that upon proper application, an officer or employee may be granted leave of absence, without loss of existing seniority or tenure to participate in a political campaign, either as an officer or as a candidate; however, time spent during such political leave shall not be counted for seniority purposes as being in service.

(3) No officer or employee covered by the merit system may engage in any political activity during the hours of employment, nor shall any person solicit political contributions from employees of the executive branch during hours of employment or through state facilities or in any manner impose assessments on state employees for political purposes; but nothing in this section shall preclude voluntary contributions by a state employee to the party of his choice.

(4) Partisan political activity shall not be a basis for employment, promotion, demotion or dismissal, except that the state director of personnel shall promulgate rules subject to the approval of the governor providing for the discipline or punishment of a state officer or employee who violates any provision of this section.

(b) Nothing contained herein shall be construed to permit partisan political activity of any state employee who is prevented or restricted from engaging in such political activity by the provisions of the federal Hatch Act.

sonnel Regulations, State of Utah, as amended May 20, 1971, Art. II § 4.[2]

Plaintiff Elder now seeks a judgment declaring Utah's law to be in violation of the First, Fifth, Ninth and Fourteenth Amendments; an injunction reinstating him in his former position (Elder was unsuccessful at the polls); damages equal to his unpaid salary; and the costs of this action. Relief and jurisdiction are claimed under 28 U.S.C. §§ 1331, 1343(3) and (4), 2201–02 and 42 U.S.C. §§ 1983, 1988. A three-judge court was convened in accordance with 28 U.S.C. §§ 2281, 2284.

## I

The federal Hatch Act [3] is the successor of measures dating from 1883 which have restricted the political activities of

---

2. This section provides:

Paragraph 1. All officers and employees shall be protected from political exploitation or abuse while allowing individual officers and employees the broadest amount of personal political participation consistent with loyal service to their superiors.

Paragraph 2. No employee of the agencies shall use his official authority or influence for the purpose of interfering with an election or affecting the results thereof.

Paragraph 3. No question in any form of application or in any examination shall be so framed as to elicit information concerning the political or religious opinions or affiliations of any applicant, nor shall any inquiry be made concerning such opinions or affiliations, and all disclosures thereof shall be discountenanced.

Paragraph 4. No discriminations shall be exercised, threatened, or promised by any person against or in favor of any applicant, eligible, or employee because of his political or religious opinions or affiliations, or race, color or national origin, or by reason of his refusal to pay, lend or contribute any part of his salary or compensation or anything else of value to any party, committee, organization, agency or person for political purposes.

Paragraph 5. No recommendation of any applicant, eligible, or employee involving a disclosure of his political or religious opinions or affiliations shall be considered or filed by the agencies, the Council or any officer or employee concerned in making appointments or promotions.

Paragraph 6. No employee shall hold other paid public office or have conflicting employment while in the employ of the agencies. Determination of such conflict shall be made by the administrative officer.

Paragraph 7. No officer or employee covered by the Merit System while in a pay status shall be a state or federal officer in any political party organization, or in any statewide political campaign. Such officer or employee may be an officer or a delegate in a political party organization at a county or inferior level or a delegate at a state or national level.

Paragraph 8. No officer or employee covered by the Merit System shall be a candidate for any political office, provided that upon proper application, an officer or employee may be granted leave of absence, without loss of existing seniority or tenure to participate in a political campaign, either as an officer or as a candidate; however, time spent during such political leave shall not be counted for seniority purposes as being in service.

Paragraph 9. No officer or employee covered by the Merit System may engage in any political activity during the hours of employment, nor shall any person solicit political contributions from employees of the executive branch during hours of employment or through state facilities or in any manner impose assessments on state employees for political purposes; but nothing in this section shall preclude voluntary contributions by a state employee to the party of his choice.

Paragraph 10. Partisan political activity, to the extent allowed above in this section, shall not be a basis for employment, promotion, demotion, or dismissal.

Paragraph 11. Any state officer or employee who is found by the Merit System Council, after appropriate hearing, to have violated any part of this section shall be guilty of a violation of the law and his services may be terminated by council order, and he may be prevented from being considered for any state service for a period of three years.

Paragraph 12. Nothing contained herein shall be construed to permit partisan political activity of any state employee who is prevented or restricted from engaging in such political activity by the provisions of the Federal Hatch Act.

3. August 2, 1939, ch. 410, 53 Stat. 1147–49; July 19, 1940, ch. 640, 54 Stat. 767–72 (codified in scattered sections of 5 U.S.C.).

government employees.[4] A broadside constitutional attack upon the act was early rejected by the United States Supreme Court. United Public Workers v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947); Oklahoma v. United States Civil Service Commission, 330 U.S. 127, 67 S.Ct. 544, 91 L.Ed. 794 (1947). More recently, however, the act and its state government progeny have faced a determined barrage of constitutional litigation which has more often than not resulted in invalidation.[5] Grounds for invalidation have centered upon the overbreadth or vagueness of these enactments.[6] Essentially unassailed is the underlying proposition that efficiency and integrity in government service legitimately may be promoted by imposing reasonable restrictions on employee political activity. E. g., United Public Workers v. Mitchell, supra at 96–98 of 330 U.S., 67 S.Ct. 556; National Association of Letter Carriers v. United States Civil Service Commission, 346 F.Supp. 578, 579 (three-judge court, D.D.C.1972). In the present case, Utah's reliance upon this proposition is not questioned. Utah's attempt to implement the proposition is attacked upon grounds of overbreadth, vagueness and arbitrariness.

## II

As the United States Supreme Court has stated, "a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms." Zwickler v. Koota, 389 U.S. 241, 250, 88 S.Ct. 391, 396, 19 L.Ed.2d 444 (1967), quoting NAACP v. Alabama, 377 U.S. 288, 307, 84 S.Ct. 1302, 1314, 12 L.Ed.2d 325 (1964). This principle is the gravamen of a charge of overbreadth. In the case before us, plaintiff claims the Utah law to be overbroad in that it prohibits certain non-partisan political activities, including the campaigning for and holding of non-partisan public office in violation of the First and Fourteenth Amendments.[7]

---

4. Discussed in United Public Workers v. Mitchell, 330 U.S. 75, 79 and n. 4, 67 S.Ct. 556, 91 L.Ed. 754 (1947).

5. Decisions resulting in invalidation, e. g., National Ass'n of Letter Carriers v. United States Civil Service Comm'n, 346 F.Supp. 578 (three-judge court, D.D.C. 1972) (federal Hatch Act is vague and overbroad); Hobbs v. Thompson, 448 F.2d 456 (5th Cir. 1971) (city ordinance invalid for vagueness and overbreadth); Mancuso v. Taft, 341 F.Supp. 574 (D. R.I.1972) (holding, inter alia, city restrictions on non-partisan activities are overbroad); Gray v. Toledo, 323 F.Supp. 1281 (N.D.Ohio 1971) (holding, inter alia, same as above); Minielly v. State, 242 Or. 490, 411 P.2d 69 (en banc, 1966) (statute is vague and overbroad); Fort v. Civil Service Comm'n, 61 Cal.2d 331, 38 Cal.Rptr. 625, 392 P.2d 385 (en banc, 1964) (statute is vague and overbroad, in part, since it restricts nonpartisan activities).

Decisions resulting in validation, e. g. Northern Virginia Regional Park Authority v. United States Civil Service Comm'n, 437 F.2d 1346 (4th Cir.), cert. denied, 403 U.S. 936, 91 S.Ct. 2254, 29 L.Ed. 2d 717 (1971) (Mitchell dictates validity of federal Hatch Act restrictions on state employee); Broadrick v. Oklahoma, 338 F.Supp. 711 (three-judge court, W.D. Okla.), appeal docketed, No. 71–1639, 41 U.S.L.W. 3067 (U.S., June 19, 1972) (state may restrict partisan political activity); State Employees Ass'n v. Nat'l Resources Bd., 298 F.Supp. 339 (three-judge court, W.D.Wis.1969) (state may restrict partisan political activity of employee; employee in present circumstance cannot raise questions of vagueness and overbreadth).

6. Id.

7. Plaintiff's claim assumes Utah's prohibition against being "a candidate for any political office" (n. 1 supra) is a prohibition of non-partisan as well as partisan political activities. We have been cited to no Utah court case interpreting the word "political" in this statute. In another context (city employee's involvement in non-partisan city elections), the Utah Supreme Court has interpreted a prohibition of "political" activity to include non-partisan activity. Fisher v. Civil Service Comm'n, 28 Utah 2d 172, 499 P.2d 854 (1972); Fire Fighters Local 1645 v. Salt Lake City, 22 Utah 2d 115, 449 P. 2d 239 (1969). Other jurisdictions have given a broad definition to the term. E. g.,

Plaintiff seeks standing to raise this issue based upon a procedural principle which allows certain "attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity." Gooding v. Wilson, 405 U.S. 518, 521, 92 S.Ct. 1103, 1105, 31 L.Ed.2d 408 (1972), *quoting* Dombrowski v. Pfister, 380 U.S. 479, 486, 85 S.Ct. 1116, 1121, 14 L.Ed.2d 22 (1965); *see* Grayned v. City of Rockford, 408 U.S. 104, 114, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). This salutary procedure has been developed to cut short the chilling effect which overbroad statutes may exert upon the exercise of First and Fourteenth Amendment freedoms. Absent this procedure, those affected by such a statute might feel coerced to refrain from the exercise of constitutionally protected freedoms pending the outcome of protracted, piecemeal litigation brought by their heartier fellows, or by government prosecutors, and only finally resulting in an appropriately truncated statute upon which the public could rely. *See, e. g.,* Dombrowski v. Pfister, *supra,* at 486–487 of 380 U.S., 85 S.Ct. 1116, and cases cited.

In view of this underlying rationale, the liberal procedures for litigating overbroad statutes are appropriately applied only when "no readily apparent construction suggests itself as a vehicle for rehabilitating the [statute] in a single prosecution" or litigation. Gooding v. Wilson, *supra,* at 521 of 405 U.S., 92 S.Ct. 1103, *quoting* Dombrowski v. Pfister, *supra,* at 491 of 380 U.S., 85 S.Ct. 1116. *See,* Zwickler v. Koota, *supra,* at 250 of 389 U.S., 88 S.Ct. 391; Baggett v. Bullitt, 377 U.S. 360, 378, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964) (both cases applying the test of ready rehabilitation to absention questions). When a statute may be pruned of its overbreadth by one judicial determination, and especially a civil determination, then constitutionally protected prerogatives are relatively easily vindicated without allowing special standing, and special relief, to one whose conduct is not constitutionally protected.

The instant circumstance is unlike that of the typical claim of overbreadth involving vague statutory terms which could be saved only by an extensive judicial gloss.[8] Plaintiff proposes a case of black or white overbreadth: the term "political" as used in the Utah law either includes partisan and non-partisan or just partisan activities. If it is assumed, as plaintiff assumes, that "political" includes non-partisan activities,[9] then a single, civil proceeding may be brought by an appropriate plaintiff in state or federal court to decide the constitutionality of such an application. If it is assumed that the breadth of the statute is unclear as to non-partisan activities, the Utah court can appropriately interpret the statute, applying if it

---

Gray v. Toledo, n. 5 *supra.* Furthermore, the regulations promulgated pursuant to the authority of the statute specifically prohibit the holding of any paid "public office" (n. 2, *supra* at para. 6, *see also* para. 2), suggesting a broad interpretation of the statutory term. However, Utah's attorney general, by his assistant in oral argument before this court, has defined the term narrowly to exclude non-partisan activities. It is noted that the federal Hatch Act specifically excludes from its prohibitions non-partisan activities. 5 U.S.C. § 7326; United Public Workers v. Mitchell, *supra* n. 4 at 100 of 330 U.S., 67 S.Ct. 556.

8. For example, in Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377

(1964), the Court dealt with the vagueness and overbreadth of state statutes requiring certain loyalty oaths. At 378, 84 S.Ct. at 1326 the Court noted:

[I]t is difficult to see how an abstract construction [by the court] of the challenged terms, such as precept, example, allegiance, institutions, and the like, in a declaratory judgment action could eliminate the vagueness of those terms. It is fictional to believe that anything less than extensive adjudications, under the impact of a variety of factual situations, would bring the oath within the bounds of permissible constitutional certainty.

9. *See* n. 7 *supra.*

choses, the "readily apparent construction [which] suggests itself as a vehicle for rehabilitating" the statute.[10]

■ We therefore conclude that the statute's coverage of non-partisan activity is an issue not properly raised in this proceeding.

### III

Plaintiff sees a pervasive vagueness in the Utah law which exists separately from the question of non-partisan political activities and which renders the law constitutionally infirm.[11] Reliance is placed principally in National Association of Letter Carriers v. United States Civil Service Commission, *supra,* which struck down the Hatch Act on grounds of vagueness and overbreadth.

■ The Hatch Act purports to prohibit from most government employees the taking of "an active part in [partisan] political management or in political campaigns" (5 U.S.C. § 7324; *see* 5 U.S.C. § 7326) which phrase is accompanied, according to the *Letter Carriers* court, by 3,000 interpretations whose cumulative meaning is inscrutable. In contrast, the Utah law (note 1 *supra*) contains relatively precise prohibitions which are accompanied by brief, generally understandable regulations (note 2 *supra*) and a statutory injunction that such regulations shall be "interpreted to protect the officer or employee from political exploitation or abuse and to allow individual state officers and employees the broadest amount of personal political participation consistent with loyal service to their superiors in state government." Note 1 *supra*. In the process of upholding an antinoise statute against a charge of vagueness the United States Supreme Court recently stated:

> Condemned to the use of words, we can never expect mathematical certainty from our language. [Footnote

omitted.] The words of the Rockford ordinance are marked by "flexibility and reasonable breadth, rather than meticulous specificity," Esteban v. Central Missouri State College, 415 F.2d 1077, 1088 (8th Cir. 1969) (Blackman, J.), cert. denied, 398 U.S. 965 [90 S.Ct. 2169] 26 L.Ed.2d 548 (1970), but we think it is clear what the ordinance as a whole prohibits.

Grayned v. City of Rockford, *supra* at 110 of 408 U.S., at 2300 of 92 S.Ct. Plaintiff has not suggested specific areas of confusion with regard to the statute's meaning. We conclude that it is sufficiently express to withstand the claim of vagueness.

### IV

■ The Utah law excludes from its restrictions on political activity approximately nine per cent of the personnel directly employed by the state as well as school staff, administrators, and teachers and the employees of other subdivisions of the state. Utah Code Ann. §§ 67–13–6; 67–13–13 (1968). Plaintiff argues that those remaining employees who are covered by the restrictions comprise an arbitrary class and, as a result, are denied equal protection of the law as mandated by the Fourteenth Amendment. As in all equal protection cases, the merit of this claim depends upon "whether there is an appropriate governmental interest suitably furthered by the differential treatment." Chicago v. Mosley, 408 U.S. 92, 95, 92 S.Ct. 2286, 2290, 33 L.Ed.2d 212 (1972).

The class of state employees restricted in their political activities is that class covered by the state merit system, a system which seeks to establish objective, efficient and non-political employment standards for civil servants. *See* Utah Code Ann. §§ 67–13–2; 67–13–13. By limiting the application of political restrictions to merit employees, Utah has

---

10. We are, of course, without power authoritatively to construe the Utah law. Gooding v. Wilson, 405 U.S. 518, 520, 92 S.Ct. 1103, 1105, 31 L.Ed.2d 408 (1972), and cases cited.

11. *See* Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed. 2d 222 (1972) and cases cited, for general discussion of vagueness.

tied these restrictions to the purposes of the merit system. Such purposes are encompassed by that appropriate governmental interest endorsed in *Mitchell* and since essentially unassailed. We find that interest to be suitably furthered by the classification at hand.

The Utah classification closely tracks that of the Hatch Act which appears to have been upheld in *Mitchell* and *Oklahoma* and to have withstood any subsequent erosion attributed to other aspects of those cases. Both exclude generally employees of the judicial and legislative branches, elected officials, personnel in policy-making positions, and the personnel of educational institutions. *Compare,* 5 U.S.C. § 7324 *with* Utah Code Ann. §§ 67–13–6; 67–13–13 (1968).

Plaintiff complains particularly of the exemption for school personnel noting that 15 school teachers sat in the last Utah legislature. But the Court has emphasized the importance of allowing teachers an unfettered hand in matters political. *See, e. g.,* Keyishian v. Board of Regents, 385 U.S. 589, 603, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967). Furthermore, the teachers involved are from local, semi-autonomous school districts and are not part of a cohesive central state government. It is not violative of the Equal Protection Clause for the state to allow local administrators and elected officials to shepherd the local interests of efficiency and integrity. The same may be said of Utah's other subdivisions, e. g. city and county governmental structures.

Plaintiff further attacks the exemption of the employees of the state's attorney general. However, the attorney general's office appears to be an essentially autonomous branch of state government. Its staff deals almost exclusively with discretionary or policy-generating matters which are ultimately endorsed by the elected attorney general. Exemption as policy makers from the contested restrictions is appropriate.

Plaintiff finally notes that an auditor employed by a state institution of higher education is exempted from the political restrictions with which plaintiff, formerly a deputy state auditor, was required to comply. We acknowledge the seeming inequity of this circumstance, but emphasize once again the value to be placed on the relative autonomy of educational institutions with respect, we believe, to both teaching and administrative activities. As presently organized, Utah's institutions of higher education administer employee standards, including certain restrictions on political activity, tailored to their own needs and we see no reason to require further interference by the state's central government.

We have reviewed each of the claims of plaintiff and find them insufficient to invalidate the Utah law.

The foregoing shall be considered findings of fact and conclusions of law pursuant to Rule 52(a), Federal Rules of Civil Procedure.