96 N.J. Super. 592 (1967)
233 A.2d 682
PASQUALE DE STEFANO, PLAINTIFF,
v.
E. NORMAN WILSON, DIRECTOR OF THE DEPARTMENT OF LAW AND PUBLIC SAFETY OF THE CITY OF HOBOKEN, AND CITY OF HOBOKEN, NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided August 25, 1967.
*594 Mr. James E. Flynn, attorney for plaintiff (Messrs. Calligy & Flynn, attorneys).
E. Norman Wilson, attorney pro se.
ROSEN, J.S.C.
This action was commenced by complaint in lieu of prerogative writs. The basic facts are not in dispute. Plaintiff De Stefano is a fireman in the City of Hoboken and a classified civil service municipal employee. He is a resident of the third ward in Hoboken and a citizen of the United States.
Plaintiff, early in 1967, announced his intention to run for councilman in the third ward. He was told by defendant Wilson, the Director of Law and Public Safety, that he had to take a leave of absence if he intended to become a candidate for such public office. Plaintiff refused to take a leave of absence and carried out his plan to run for councilman. The election was held on May 9, 1967 and plaintiff was not elected.
On April 11, 1967 plaintiff was served with notice of charges specifying that his conduct in running for office without taking a leave of absence violated Rules 128 and 132(f) of the fire department. The written charges filed against plaintiff by the chief of the fire department are as follows:
"1. That on March 2, 1967 Pasquale A. DeStefano received from Anthony J. Amoruso, City Clerk of the City of Hoboken, 50 petition forms and acceptance forms for Ward Councilman for the Municipal Election on May 9, 1967 for the Third Ward in the City of Hoboken.
2. That thereafter the said fireman, Pasquale De Stefano, was advised by the Director of the Department of Law, Division of *595 Public Safety, that under the Rules and Regulations of the Division of Public Safety, Bureau of Fire, that he would be required to take a leave of absence to take an active part in politics or political contests or engage in controversies concerning candidates or issues.
3. That on March 17, 1967, Pasquale A. De Stefano and May L. De Stefano filed the Affidavit of Candidate and Campaign Manager annexed to the petitions filed by the said Pasquale A. De Stefano as a candidate for Ward Councilman in the Third Ward for the Municipal Election to be held on May 9, 1967, in the City of Hoboken.
4. That on March 22, 1967 the said Pasquale De Stefano submitted the following slogan:

`The People's Dedicated Servant.'
5. That the said Pasquale De Stefano was present at the City Clerk's Office on April 6, 1967, at 3:00 P.M. which was the time and place for the drawing of position on the ballot for Ward Councilman on May 9, 1967.
6. As of the day and date hereof, the said Pasquale A. De Stefano still remains a Candidate for Councilman in the Third Ward."
Plaintiff was ordered to appear before defendant director on May 10, 1967, the day after election, to answer the charges. On that date he pleaded not guilty and questioned the constitutionality of Rule 128. The hearing was adjourned to May 26, 1967 in order to enable plaintiff to obtain the services of an attorney. Plaintiff thereafter filed a complaint in lieu of prerogative writs, and a temporary restraining order was obtained against the director enjoining him from conducting the hearing. By consent, the restraint continues in effect until the disposition of this matter.
Rule 128 provides as follows:
"No members shall take an active part in politics or political contests or engage in controversy concerning candidates or issues."
Rule 132(f) forbids "conduct prejudicial to good order and discipline." At the oral argument it was conceded that the charges brought against plaintiff under Rule 132 (f) are predicated upon the same facts which constitute the basis of the alleged violations of Rule 128. As stated in defendant's brief,
*596 "In March of 1967, De Stefano and Chief Carmody of the Fire Department came to the office of the Director of Law and advised the Director that he, De Stefano, had filed a petition as a Candidate for Councilman in the Third Ward of Hoboken. De Stefano was advised by the Director that his filing of the Petition and running for the office of Councilman was, in the Director's opinion, a violation of Rule 128 of the Fire Department and his action in so doing could amount to conduct prejudicial to good order and discipline of the Department."
The crucial question imposed by the instant case is whether Rule 128 places a forbidden burden upon the exercise of plaintiff's liberties which are protected by the First Amendment of the United States Constitution.
Defendant initially contends that the complaint should be dismissed because of plaintiff's failure to exhaust his administrative remedies prior to the institution of this action. Plaintiff is not required to exhaust his administrative remedies under R.R. 4:88-14 under the circumstances here presented. This matter does not involve any question of administrative discretion or judgment. Nor is there any factual dispute. The sole question to be determined by this court is one of constitutional law. It is firmly established that where the disposition of a matter depends solely on the decision of a question of law, the interests of justice do not require exhaustion of administrative remedies before resort may be had to the courts. Nolan v. Fitzpatrick, 9 N.J. 477, 486-487 (1952); Wilbert v. De Camp, 72 N.J. Super 60, 68 (App. Div. 1962). Defendant's procedural challenge is wholly without merit.
We turn, therefore, to the gravamen of plaintiff's complaint that Rule 128 violates the First Amendment of the United States Constitution. The freedoms guaranteed by the First Amendment are fundamental. As was stated by Justice Cardozo in Palko v. State of Connecticut, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1939)
"We reach a different plane of social and moral values when we pass to the privileges and immunities that have been taken over from the earlier articles of the Federal Bill of Rights and brought within *597 the Fourteenth Amendment by a process of absorption. These in their origin were effective against the federal government alone. If the Fourteenth Amendment has absorbed them, the process of absorption has had its source in the belief that neither liberty nor justice would exist if they were sacrificed. * * * This is true, for illustration, of freedom of thought and speech. Of that freedom one may say that it is the matrix, the indispensable condition, of nearly every other form of freedom. * * * So it has come about that the domain of liberty, withdrawn by the Fourteenth Amendment from encroachment by the states, has been enlarged by [the] latter-day judgments to include liberty of the mind as well as liberty of action." (at pp. 326-327), 58 S.Ct., at p. 152
Liberty of the mind represents the four freedoms of the First Amendment. It is the "rule of a free society and the burden of proving the need for curtailment of that liberty" is cast upon those defending exceptions to the rule. Konefsky, The Legacy of Holmes and Brandeis, pp 237, 238 (1956). While liberty of the mind affirmatively encompasses freedom of speech it also includes the right not to be deprived of this right. The right to express ourselves openly and freely is constitutionally guaranteed, subject only to the most limited exceptions. Indeed, the special importance of this guarantee of freedom of speech was noted recently by the United States Supreme Court in Curtis Publishing Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967):
"It is significant that the guarantee of freedom of speech and press falls between the religious guarantees and the guarantee of the right to petition for redress of grievances in the text of the First Amendment, the principles of which are carried to the States by the Fourteenth Amendment." (at p. 1988)
The freedom of speech which is secured by the First Amendment against abridgment by the Federal Government is protected by the due process clause of the Fourteenth Amendment against abridgement by state action, including state action in the form of municipal action. Staub v. City of Baxley, 355 U.S. 313, 78 S.Ct. 277, 2 L.Ed.2d 302 (1958).
*598 The right to engage in political activity is a corollary of the free speech guarantee and it therefore falls within the same privileged cloak of constitutional protection. Because this right is so firmly rooted in our history and traditions, and because it is so basic to our democratic process, there is decisional law declaring that the right to engage in political activity is a constitutional right protected by the First Amendment rather than a privilege obtained by grace. In Sweezy v. State of New Hampshire, 354 U.S. 234, 77 S.Ct. 1203, 1 L.Ed.2d 1311 (1957), the court said:
"Equally manifest as a fundamental principle of a democratic society is political freedom of the individual. Our form of government is built on the premise that every citizen shall have the right to engage in political expression and association. This right was enshrined in the First Amendment of the Bill of Rights. * * *" (at p. 250, 77 S.Ct., at p. 1212)
In Minielly v. State of Oregon, 242 Or. 490, 411 P.2d 69 (1965), the Supreme Court of Oregon reaffirmed this principle.
"[I]t must be conceded that running for public office is one of the means of political expression which is protected by the First Amendment. The right to engage in political activity is implicit in the rights of association and free speech guaranteed by the amendment." (at p. 73)
There can be no doubt at this late date that a public employee is entitled to virtually the same constitutional protections as an ordinary citizen. It is well settled that the mere fact of public employment does not and should not deprive an individual of his First Amendment rights. Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952); Slochower v. Board of Higher Education of New York City, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956); Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963). It is true that certain general regulatory requirements may be imposed upon the exercise of First Amendment rights if it can be *599 demonstrated that there is an imperative necessity to protect the public from irresponsible activity so serious in nature that it would disrupt the public welfare. The burden is upon the governing body to show that there is a compelling public interest which warrants the restriction of First Amendment rights. In the absence of such a showing, these rights are not subject to impairment or destruction. Thomas v. Collins, 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430 (1945); Bates v. City of Little Rock, 361 U.S. 516, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960); NAACP v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); Gibson v. Florida Legislative Investigation Committee, 372 U.S. 539, 83 S.Ct. 889, 9 L.Ed.2d 929 (1963).
Out-of-state cases which have considered questions closely related to the issue at hand have recognized the constitutionally protected right of public employees to engage in political activity, and have not been loathe to invalidate legislation or administrative rules which infringe upon the exercise of such right. Fort v. Civil Service Commission of Alameda County, 61 Cal.2d 331, 38 Cal. Rptr. 625, 392 P.2d 385 (Sup. Ct. 1964); Minielly v. State of Oregon, supra. In Fort the court considered the constitutionality of a section of a county charter which provided that no civil service employee could take any part in political management or affairs in any political campaign or election. Plaintiff, a civil service employee, was chairman of a speakers bureau for the reelection of a Governor of the State of California and was dismissed from his employment because of such activity. The court held the provision unconstitutional because of its sweeping restraint upon plaintiff's First Amendment rights. The court said:
"The freedom of the individual to participate in political activity is a fundamental principle of a democratic society and is the premise upon which our form of government is based. * * * and the First Amendment of the federal Constitution establishes the right of every citizen to engage in political expression and association. * * * In this state both statutes and judicial decisions have recognized the *600 fundamental right of citizens generally not only to vote but also to hold office * * *.
The restrictions appearing in section 41 of the charter are framed in broad language and cover a wide range of activities. As we have seen, the section declares that a person holding a position in the classified civil service shall not take `any part in political management or affairs in any political campaign or election,' including a campaign to `adopt or reject any initiative or referendum measure.' * * * The prohibition is also of sufficient breadth to apply to political activity concerning all propositions on the ballot, even including measures which would directly and personally affect the employee such as one relating to his own salary or working conditions. Because of the broad and general terms of the section, it is not clear what additional conduct may be proscribed, for example membership in a political organization or attendance at political gatherings, and likewise unclear is the extent to which an employee is free to voice his opinion on issues and candidates. The only express limitation on the sweeping prohibition is contained in the phrase `other than to cast his vote or to privately express his opinion.'" (38 Cal. Rptr., at p. 627, 392 P.2d, at pp. 387-388)
Kinnear v. City and County of San Francisco, 61 Cal.2d 341, 38 Cal. Rptr. 631, 392 P.2d 391 (Sup. Ct. 1964), is to like effect.
The California Supreme Court in a recent case again considered the constitutionality of restraints imposed upon the political activities of public employees and concluded that such restrictions were unconstitutional. Bagley v. Washington Township Hospital District, Cal, 55 Cal. Rptr. 401, 421 P.2d 409 (1966). Plaintiff was a nurse's aide who performed her assignments to the complete satisfaction of her superiors. A number of citizens became dissatisfied with the defendant district's policies and commenced a campaign to recall certain of its directors from office. Plaintiff participated in the activities of this group by attending meetings, circulating recall petitions and distributing literature. She confined her activities on behalf of the recall campaign to her off-duty hours, and in seeking to influence interested citizens to vote for the recall she did not advise them of her employment by the district. Thereafter defendant hospital district issued a memorandum to all hospital personnel, including plaintiff, wherein they were advised *601 that "employee participation in any political activity for or against any candidate or ballot measure pertaining to the * * * District is unlawful and will not be acceptable conduct for an employee of this hospital and shall constitute grounds for disciplinary action and/or dismissal." The memorandum further directed the employees' attention to the government code which provided that "no officer or employee whose position is not exempt from the operation of a civil service personnel or merit system of a local agency shall take an active part in any campaign for or against any candidate, except himself, for an office of such local agency, or for or against any ballot measure relating to the recall of any elected official of the local agency." (Emphasis supplied). The court held that:
"The restrictions imposed upon plaintiff's political activities by Government Code section 3205 and the board's directive are not, as Fort insists that they must be, `required to preserve the efficiency and integrity of [the] public service.' The sweeping prohibitions of the statute and the directive are not necessary to the successful functioning of the civil service system. Indeed, the defendant district has not even attempted to demonstrate that such political restrictions even relate to the general purposes of the civil service legislation." (55 Cal. Rptr., at p. 408, 421 P.2d, at p. 416)

* * * * * * * *
"In summary we note that the expansion of government enterprise with its ever-increasing number of employees marks this area of the law a crucial one. As the number of persons employed by government and governmentally-assisted institutions continues to grow the necessity of preserving for them the maximum practicable right to participate in the political life of the republic grows with it. Restrictions on public employees which, in some or all of their applications, advance no compelling public interest commensurate with the waiver of constitutional rights which they require imperil the continued operation of our institutions of representative government.
This court has recognized the right of governmental agencies to preserve their harmonious operation by restricting such political activities as directly threaten administrative disruption or a loss of integrity. When, however, the sweep of the restrictions imposed extends beyond the area of permissible limitation, we are obliged to strike down such strictures and any official act predicated upon them." (Ibid., 55 Cal. Rptr., at p. 409, 421 P.2d, at p. 417)
*602 Applying these principles to the factual situation in this case, there is no forceful or compelling public interest which can justify the imposition of the restraints attempted to be placed upon the plaintiff by Rule 128. Rule 128 exacts a surrender of freedoms unrelated to the public welfare or common weal. It bears no reasonable relation to the promotion of efficiency, integrity or discipline within the Hoboken Fire Department. Defendants do not charge plaintiff, a classified civil service employee, with violation of any provisions of the Civil Service Act or the rules or regulations of the Civil Service Commission. Plaintiff is not charged with having conducted his political campaign while on duty. Nor is he charged with neglecting his duties as a fireman or in any way subserving the responsibilities of his position to his personal political objectives.
Rule 128 suffers from sweeping restrictions which impose unconstitutional restraints upon public employees. It is more prohibitive than the provisions which were held unconstitutional in Bagley, supra. In that case, the government code permitted the public employee to engage in political activity on his own behalf so that such person could run for public office without taking any leave of absence and without violating any statutory regulation. Despite the fact that the limitations therein were narrower and more defined than Rule 128, the court nevertheless found the provisions to be unconstitutional. The "overbreadth" of Rule 128 is obvious. It is not drawn with that degree of specificity which is required in order to sustain the restraints which it imposes upon the exercise of constitutional rights. Rule 128 effectively deprives plaintiff of his right as a citizen to participate in any phase of political life. It not only prevents him from running for public office and participating in political campaigns, but it also deprives him of his constitutional right to speak freely on public questions, issues and controversies. This is not consonant with the American tradition of recognizing an *603 individual's right to "speak out and be heard." The court concludes that Rule 128 is unconstitutional.
For the foregoing reasons the court permanently enjoins the defendants from proceeding against the plaintiff on the charges filed against him pursuant to Rule 128 which encompasses the charges under Rule 132(f).