**William J. GRAY et al., Plaintiffs,**

**v.**

**CITY OF TOLEDO et al., Defendants.**

**Civ. No. C 70–331.**

United States District Court,
N. D. Ohio, W. D.

March 10, 1971.

Harland Britz, Jack Gallon, George Royer, Toledo, Ohio, for plaintiffs.

Frank Pizza, Joseph Goldberg, City Law Department, Toledo, Ohio, for defendants.

## OPINION

DON J. YOUNG, District Judge:

This cause came to be heard upon a complaint filed pursuant to the provisions of 28 U.S.C. § 2201 and 42 U.S.C. § 1983. Plaintiffs, individually and as representatives of a class, pray for a declaratory judgment finding Section 143.-41, Ohio Revised Code, unconstitutional as applied to their political activity, and for a declaratory judgment finding Toledo City Charter Provision 178, Rule 12 of the Toledo Police Department, and Rule 80.08 of the Civil Service Commission unconstitutional as infringing upon the plaintiffs' first and fourteenth amendment rights to free speech and association.

A hearing was held on January 25, 1971 at which both of the individual plaintiffs testified.

Plaintiff Gray testified that he had served on the police force of the City of Toledo for some thirty-one years and presently held the rank of Captain. He stated that he had to refrain from the following activities for fear of violating Rule 12: rendering opinions to various citizen groups regarding state and local government actions; the making of speeches and publication of a book on crime prevention, both of which would entail criticism of public officials; run-

ning for public office; and circulation of nominating petitions.

Plaintiff Caygill testified that he has been a member of the Toledo Police Department for a period of seven years and that he was currently serving as President of the Toledo Patrolmen's Association. He further testified that in his capacity as President of the Association he has consulted with city officials on numerous occasions with respect to economic and working conditions of the Police Department; that such activity occasionally requires the criticism of public officials, and that he has received indications that such activity is in violation of Rule 12. He further testified that he had engaged in certain partisan political activity, including a television appearance in which he endorsed a candidate for state senate, speechmaking, and the circulation of nominating petitions.

Both plaintiffs stated that they desired to engage in additional activity which they had deemed political but had refrained from so acting for fear of violating Rule 12. They further stated that they desired to engage in political activity in the future.

On cross-examination both plaintiffs testified that Rule 12 had never been enforced against them, and that to their knowledge it had never been enforced against any other member of the police department.

■■ Defendants have raised the issue of the plaintiffs standing to maintain this action. Their argument is to the effect that since no official action has been taken against the plaintiffs, there exists no actual controversy between the parties and therefore the Court has no jurisdiction over the subject matter of the action. This argument loses sight of the fact that the requisite showing of adversity is less stringent in first amendment cases because of a possible "chilling effect" on first amendment rights. Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). In Muller v. Conlisk, 429 F.2d 901 (7th Cir. 1970), the court addressed itself to the question of a police officer's standing to challenge the constitutionality of his department's disciplinary Rule 31 and stated at p. 903:

> Rule 31 stands as a "threat of sanctions" intended to inhibit the right of policemen to speak as freely as other citizens on matters of public concern. If, as alleged, it sweeps too broadly, it has the effect of inhibiting constitutionally protected speech. Plaintiff is a member of the group at which Rule 31 is directed and, as such, his right to speak is presently subject to curtailment by Rule 31. This is sufficient to establish his standing to challenge the rule quite apart from any specific sanction which has been imposed upon him for its violation. See also, National Student Association v. Hershey, 412 F.2d 1103 (D.C.Cir.1969).

■ Another matter which warrants preliminary discussion is the propriety of the class action. It appears to the Court that the requisites of Rule 23 of the Federal Rules of Civil Procedure are present and therefore this matter may proceed as a class action.

Pertinent to a discussion of the merits of this controversy is the case of United Public Workers of America v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947), upholding the constitutionality of the Hatch Act which prohibited, to a certain extent, political activities of federal employees. The Court made the following observations:

(1) that Congress has the power to regulate, within reasonable limits, the political conduct of federal employees, in order to promote efficiency and integrity in the public service, 330 U.S. at 96–103, 67 S.Ct. 556;

(2) that the constitutional guarantees of free speech and association are not absolutes—a court must balance the extent of these freedoms against a legislative enactment designed as a safeguard against the evil of political partisanship

by governmental employees, 330 U.S. at 95–96, 67 S.Ct. 556;

(3) that the Hatch Act allows federal employees to participate in political decisions at the ballot box and prohibits only the partisan activity that would threaten efficiency and integrity and does not restrict public and private expressions on public affairs and personalities, not an objective of party action, so long as the employee does not channel his activity towards party success, 330 U.S. at 99–100, 67 S.Ct. 556;

(4) that the determination of the extent to which the political activities of governmental employees shall be regulated lies with Congress and courts will interfere only when the regulation passes beyond the permissible limitations, 330 U.S. at 102, 67 S.Ct. 556.

 While the first amendment rights have become a front runner of judicial concern since the *Mitchell* decision in 1947, various courts faced with first amendment challenges to the Hatch Act have had little difficulty in adhering to the holding in *Mitchell*. See e. g., Palmer v. United States Civil Service Commission, 297 F.2d 450 (7th Cir.) cert. denied, 369 U.S. 849, 82 S.Ct. 932, 8 L.Ed.2d 8 (1962); Fishkin v. United States Civil Service Commission, 309 F. Supp. 40 (N.D.Cal.1969); Democratic State Central Committee v. Andolsek, 249 F.Supp. 1009 (D.Md.1966); Gray v. Macy, 239 F.Supp. 658 (D.Or.1965) rev'd on other grounds, 358 F.2d 742 (9th Cir. 1966). These decisions recognize that the protection of the efficiency and integrity in the public service constitutes a sufficient governmental interest to permit an encroachment upon the first amendment rights of the employees. This Court is constrained to follow these rulings. A government's interest in avoiding the danger of having promotions and discharges of civil servants motivated by political ramifications rather than merit is highly significant, Ex

Parte Curtis, 106 U.S. 371, 1 S.Ct. 381, 27 L.Ed. 232 (1882). Where advancement in the public service is predicated exclusively upon merit, the entire society benefits from a more efficient and honest public service. This interest is of such a calibre that it may properly be classified as a compelling governmental interest. A showing of a compelling governmental interest is sufficient to justify an encroachment upon an individual's first amendment rights. Gibson v. Florida Legislative Investigation Committee, 372 U.S. 539, 83 S.Ct. 889, 9 L.Ed.2d 929 (1963); N.A.A.C.P. v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed. 2d 405 (1963); Thomas v. Collins, 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed 430, rehearing denied, 323 U.S. 819, 65 S.Ct. 557, 89 L.Ed. 650 (1945).

 However, any restriction imposed by the government upon its employees' political activity must be directly related to the goal of prohibiting partisan political activity, the effect of which interferes with the efficiency and integrity of the public service. If no such relationship exists, the regulation must be struck down as violative of the first amendment rights of the employees. The more remote the relationship between a particular activity and the performance of official duty, the more difficult it is for the government to justify the restriction on the grounds that there is a compelling public need to protect the efficiency and integrity of the public service. Fort v. Civil Service Commission, 61 Cal.2d 331, 38 Cal.Rptr. 625, 392 P.2d 385 (1964); Minielly v. Oregon, 242 Or. 490, 411 P.2d 69 (1966). In addition, a government's right to infringe upon first amendment rights must be so circumscribed as not, in attaining a legitimate end, to unduly infringe upon protected rights. Cantwell v. Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940).

 While the *Mitchell* decision concerned itself with Congress's right to regulate the political activity of certain federal employees, it is clear that any legislature, be it state or municipal, pos-

**1286**

sesses the same interest and therefore has a similar right to regulate the political activity of its classified employees. See Stack v. Adams, 315 F.Supp. 1295 (N.D.Fla.1970); Wisconsin State Employees Assoc. v. Wisconsin Natural Resources Bd., 298 F.Supp. 339 (W.D.Wis. 1969); Johnson v. Civil Service Dept., 280 Minn. 61, 157 N.W.2d 747 (1968). However, the position taken by this Court is that the Hatch Act limitations sanctioned by the Supreme Court in *Mitchell* represents the outermost limitation to which any governmental body may restrict the political activities and free speech of its employees. The key concepts are that the promotion, protection and preservation of the efficiency and integrity of·the public service constitutes a compelling state interest and that partisan political activity by civil servants is a direct and viable threat to an efficient and honest public service.

Section 143.41, Ohio Revised Code

No officer or employee in the classified service of the state, the several counties, cities, and city school districts thereof, shall directly or indirectly, orally or by letter, solicit or receive, or be in any manner concerned in soliciting or receiving any assessment, subscription, or contribution for any political party or for any candidate for public office; nor shall any person solicit directly or indirectly, orally or by letter, or be in any manner concerned in soliciting any such assessment, contribution, or payment from any officer or employee in the classified service of the state and the several counties, cities, or city school districts thereof; nor shall any officer or employee in the classified service of the state, the several counties, cities, and city school districts thereof, be an officer in any political organization or take part in politics other than to vote as he pleases and to express freely his political opinions.

A reading of the Ohio statute by itself leaves the reader with the impression that the statute is overreaching in that it encompasses protected political activ-

ity. Basically the problem lies with the use of the words "political" and "politics". Do these words refer to "the science of government and civil polity" or are they used in the narrower sense of referring to "political affairs in a party sense"? Funk & Wagnalls, New Standard Dictionary (1952). If the former is the proper interpretation, the provisions are overreaching. If, however, these words are used in a partisan sense, the activity which is prohibited is non-protected speech under the guidelines set forth by the Supreme Court in *Mitchell*. In discussing Section 143.41, the Ohio Supreme Court has noted that "[t]he word, 'politics' * * * must be defined as politics in its narrower partisan sense * * *." Heidtman v. City of Shaker Heights, 163 Ohio St. 109 at 119–120, 126 N.E.2d 138, at 139 (1955).

In declaring a litigant's rights under a state statute this Court must read the statute in light of the interpretation given to it by the state courts. Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964); Kingsley International Pictures Corp. v. Regents of University, 360 U.S. 684, 79 S.Ct.·1362, 3 L.Ed.2d 1512 (1959). By interpreting the words "political" and "politics" in their narrower partisan sense, Section 143.41 regulates nonprotected political activity and is, therefore, a lawful enactment by the legislature. The statute does not prohibit the designated employees from directly engaging in nonpartisan political activity and expressly preserves their right to express their political opinions freely.

Section 178, Toledo City Charter and Rule 80.08, Civil Service Commission

No person in the administrative service shall directly or indirectly solicit or receive, or be in any manner concerned in soliciting or receiving any assessment, subscription or contribution for any political party or political purpose, whatsoever. No person shall orally, or by letter, solicit, or be in any manner concerned in soliciting, any assessment, subscription,

or contribution for any political party from any person holding a position in the classified service. Any violation of this section shall operate to forfeit the office or position held by the person violating the same and shall render any such person ineligible to any municipal office or position for a period of one year.[1]

█ The first sentence of both the Charter provision and the Civil Service Rule prohibits the specified employees from soliciting or receiving contributions, etc. "for any political party or political purpose. * * *" That portion dealing with "political purpose" is ambiguous—it encompasses both protected and non-protected activity and is, therefore, overreaching. The phrase "political purpose", which is presented in the disjunctive, is not limited to conduct regarding partisan officers and issues but relates equally to all candidates and questions, whether or not they are identifiable with a political party. Fort v. Civil Service Commission, *supra*; Kinnear v. City of San Francisco, 61 Cal.2d 341, 38 Cal.Rptr. 631, 392 P.2d 391 (1964). The latter activity is, of course, protected speech. Its bearing upon the efficiency and integrity of the public service is dubious at best and is violative of the plaintiffs' first and fourteenth amendment rights.

█ The second sentence of the Charter provision and Civil Service Rule applies only to partisan activity and is a valid restriction.

Rule 12, Toledo Police Department

Section 1. No member of the division of police shall in any way, or manner, be concerned in giving, soliciting or receiving any assessment or contribution for any political party or candidate for public office, nor shall he take any active part in political movements or political campaigns, or act as an officer in any political party or organization or political club nor become a candidate for political office.

Section 2. The following activities are deemed political and are, therefore, prohibited:

a) Service on or for any political committee promoting the candidacy of any person for political office.

b) Candidacy for or service in any political convention or causes, either as a delegate, alternate or employee.

c) Speaking at political meetings on subjects pertinent to such meetings.

d) Solicitation of votes affecting or pertinent to any candidacy or public office.

e) Activity as a checker, watcher or challenger for any party, faction or group of candidates.

f) Making a public attack upon a candidate for public office, or upon any office holder either by speech or in public print.

g) Requiring political service of any subordinate.

h) Circulation of petitions for any candidate for public office.

i) Engaging in political discussions while on duty, or in any station house with anyone.

Rule 12 is the restriction that affects the plaintiffs the greatest and to which they voice the most objection.

█ The Court notes at the outset that absent is any statement as to the general policy of the Rule by which the specific prohibitions might be interpreted. As such, the Court must give the words used in the Rule their customary and usual meaning. As previously noted, the words "politics" and "political" have two separate and distinct meanings: one pertains to the science of government and civil polity; the other is narrower and refers to

---

[1]. The Charter provision and the Civil Service Rule are identical in language and will be discussed together.

political affairs in a partisan sense. A rule which restricts political activity as that word is used in its broader sense is overly broad and touches upon protected political activity. Where, however, the words "politics" and "political" are modified by an adjective that connotes partisanism, the restricted activity is not so protected. In failing to define these terms, Rule 12 is overly broad—it is not drawn with the degree of specificity which is required in order to sustain the restraints which it imposes upon the exercise of constitutional rights.

Ambiguous words touching upon first amendment rights also suffer the constitutional infirmity of vagueness. The naked use of the words "political" and "politics" leaves a police officer in a very precarious position. He must venture a guess as to which activities are encompassed by these words as used in Rule 12. Once he acts, he does so at his peril, always in fear that his superiors in the department will not agree with his particular interpretation of the Rule. Or of equal importance, he could engage in self-censorship by denying himself the opportunity to engage in protected political activity for fear that such activity would later be deemed activity which is not protected by the first amendment. cf. Smith v. California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959); Speiser v. Randall, 357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958). This problem of vagueness is not remedied by saying that the policeman could first request a reading as to the propriety of his actions from his supervisors. This would vest his supervisors with unfettered discretion in determining which desired activity is permissible under the Rule.

Under these guidelines, the Court notes the following constitutional defects contained in Section 1 of the Rule. The terms "candidate for public office", "political movements", "political campaigns", "organization" and "political club" are imprecise; they may be construed in a partisan as well as a non-

partisan fashion and are therefore, overreaching. Mention should also be made of the fact that the City has no legitimate interest in restricting an employee's right to make voluntary contributions to a regularly constituted partisan political organization. See United States Civil Service Commission, Political Activity of Federal Officers and Employees, #20 (1966).

The prohibition in Section 1 pertaining to "political party" activity is partisan by definition and may properly be regulated.

A difficult problem arises with reference to that portion of Section 1 which prohibits a police officer from becoming a candidate for public office. While some courts have held similar prohibitions to be unconstitutional, see e. g., De Stefano v. Wilson, 96 N.J.Super. 592, 233 A.2d 682 (1967); Minielly v. Oregon, *supra*, this Court does not join in that conclusion. The right to engage in politics and political discussion like other constitutional rights is not absolute. The relinquishment of the right to become a candidate for public office may constitutionally be made a condition of public employment. Stack v. Adams, *supra*; Wisconsin State Employees Association v. Wisconsin Natural Resources Board, *supra*; cf. 5 U.S.C. § 1502(a). However, in balancing the respective rights of the parties, the Court feels that some provision should be made so that a police officer desiring to run for public office may obtain a leave of absence. Captain Gray testified that such leave had been denied to him upon request.

Section 2 contains a list of several prohibited political activities. Out of the nine specified acts, the Court finds that only three, subsections (b), (e), and (g), can be taken to apply to partisan political activity and represent legitimate governmental restrictions on the first amendment rights of the employees. Subsections (a), (c), (d), (f), (h) and (i) can be taken to apply equally to partisan and nonpartisan po-

litical activity and are therefore overreaching.

Plaintiffs have raised the issue of whether public criticism of the Police Department or certain individual members thereof is prohibited activity under Rule 12. Captain Gray and Officer Caygill both testified that they entertained such fears. Due to the vagueness of the Rule, such activity might be covered under subsection (f). On this point the following language is pertinent:

" '[P]olicemen, like teachers and lawyers, are not relegated to a watered-down version of constitutional rights.' Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967). They, like other public employees, enjoy the protection of the First Amendment. In Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), the Court dealt with the First Amendment right of public employees to speak on matters of public concern relating to their employment and with the right of the state, as an employer, to regulate the exercise of such right. * *

The Court concluded that no general standard could be fashioned in such situations and found that 'the problem in any case is to arrive at a balance between the interests of the —(employee), as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.' 391 U.S. at 568, 88 S.Ct. at 1734. The Court expressly held that the state could not entirely deny the right of its employees to criticize their employer. 391 U.S. at 568, 570, 88 S.Ct. 1731.

* * * To the extent that being a policeman is public employment with unique characteristics, the right of the employee to speak on matters concerning his employment with the full freedom of any citizen may be more or less limited. It is not, however, destroyed. Muller v. Conlisk, *supra*, 429 F.2d at 904.

Judge, later Justice, Holmes once commented "[one] may have a constitutional right to talk politics, but he has no constitutional right to be a policeman." McAuliffe v. City of New Bedford, 155 Mass. 216, 220, 29 N.E. 517 (1889). Times have changed since Holmes' famous epigram and now to justify an infringement upon one of its employee's first amendment rights, the state has the burden of demonstrating a compelling governmental interest. Bruns v. Pomerleau, 319 F.Supp. 58 (D. Md.1970). The key element is, of course, whether the public statement is of such a calibre as to disrupt and impair the public service. In re Gioglio, 104 N.J. Super. 88, 248 A.2d 570 (1968). Subsection (f) of Rule 12 does not exclude from its operation public criticism of the police department or of public officials that is not of a disruptive nature. It is therefore unconstitutional on the basis of vagueness as well as its being overreaching.

Of all of the prohibitions contained in Section 2, the one most repressive is subsection (i). Not only is the restriction applicable to both partisan and nonpartisan political discussion, but the City has no legitimate interest in restricting an employee's right to discuss partisan politics during working hours. This is an unconstitutional gagging of a policeman's right to free speech and expression. The Hatch Act reserves to the employee the right to express his opinion on all political subjects and candidates so long as such activity is not directed towards party success. United Public Workers of America v. Mitchell, *supra*, 330 U.S. 75, at 100, 67 S.Ct. 556, 91 L.Ed. 754. The City of Toledo cannot go beyond this limitation.

This opinion will serve as the Court's findings of fact and conclusions of law. Counsel for the plaintiffs should prepare and submit an order expressive of these matters in accordance with the Rules of this Court.