## Robarts v. City of Erie

*David G. Ridge,* for plaintiff.
*Gene P. Placidi,* for defendant.

CONNELLY, *J.,* October 17, 1986 — This matter is before the court pursuant to plaintiff's action for declaratory judgment. Plaintiff, David R. Robarts, seeks to overturn special order no. 1-86 on the ground that it is unconstitutional because it allegedly violates plaintiff's First Amendment right to run for elective public office.

The relevant facts of this case are these:

On or about January 29, 1986 Richard Skonieczka, then Chief of Police for the City of Erie, Pa., issued special order no. 1-86 to all police personnel concerning "Police" — "Politics" Policy and Procedures. The special order outlined the process that a sworn police officer must adhere to if the officer intended to run for public office. A corrected copy of the special order was dated March 7, 1986.[1] In relevant part the special order states:

---

1. Special Order (corrected copy March 7, 1986) "Police" — "Politics" Policy and Procedures

"On the date the officer files his petition with the County Election Bureau, he is then declared to be an official candidate for elective public office. He shall be required at this time to submit to the Chief of Police a written letter of resignation or request for a leave of absence requiring approval. If latter applicable, he shall be required to resign immediately following winning the election."

There is no dispute from plaintiff's counsel that if Officer Robarts decides to become a candidate for

---

This policy shall adopt a standard operating procedure for all sworn members of the Erie Bureau of Police.

"The City of Erie shall not deny any person the right to participate in his candidacy for an elective public office; however, any sworn police officer intending to be a candidate for a public office, must submit a written notice of his intentions to run for an elective public office to the Chief of Police.

In the declarations of intentions, the officer must state that he will not circulate any election petition while on scheduled duty performing police services, nor shall he engage or participate in any political activity during on duty hours.

On the date the officer files his petition with the County Election Bureau, he is then declared to be an official candidate for elective public office. He shall be required at this time to submit to the Chief of Police a written letter of resignation or request for a Leave of Absence requiring approval. If latter applicable, he shall be required to resign immediately following winning the election.

Also, no sworn police officer shall circulate any petition for any candidate during his regular tour of duty, nor shall he solicit any assessments or monetary contribution for any political organization.

Any sworn police officer who has been elected and is currently serving as an elected public official shall be permitted to continue his term of office until his date of expiration. Hence forward, there shall be compliance with these established procedures.

Failure to comply shall be cause for immediate suspension with recommended dismissal.

Effective immediately.

public office his leave of absence will be granted. (Signed Affidavits by Acting Chief of Police Jack Cousins and Director of Police Operations Arthur Berardi; see defendant's original brief in support of defendant, The City of Erie, Bureau of Police, attached Affidavits.) Officer Robarts intends to run for the position of District Justice for the Sixth Ward of the City of Erie. However, Officer Robarts contends that the special order in effect prohibits a police officer from being a candidate for any elective public office thereby violating the First Amendment of the United States Constitution.[2] Defendant, The City of Erie, asserts the special order is constitutional and valid because it does not totally prohibit a police officer from running for elective office and that the Police Department has a compelling interest in issuing the special order.

The sole issue to be decided by this court is:

"Whether special order no. 1-86, issued by the city of Erie, Bureau of Police, is unconstitutional as violating plaintiff's first amendment right to run for elective public office."

The right to run for public office is an important right, but not a fundamental right, protected by the First Amendment. United States Civil Service Commission v. National Association of Letter Carriers, 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973); Otten v. Shicker, 655 F.2d 142 (8th Cir. 1981); Hickman v. City of Dallas, 475 F.Supp. 137, (N.D. Texas 1979). The Supreme Court in United

_____

2. U.S. Const. Amendment I states:

"Religious and political freedom.

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

States Civil Service Commission v. National Association of Letter Carriers, supra, 413 U.S. at 567, 93 S.Ct. at 2891, held that: "Neither the right to associate nor the right to participate in political activities is absolute in any event." See Broderick v. Oklahoma, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973).

Relevant case law provides that federal and state officials may regulate the First Amendment rights of various government employees to an extent greater than is appropriate for regular citizens. The Supreme Court in Pickering v. Board of Education, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968), held that the government has an interest in regulating the conduct and "the speech of its employees that differ[s] significantly from those it possesses in connection with regulation of the speech of the citizenry in general." Additionally, in Letter Carriers, supra, the Court reaffirmed its holding in United Public Workers of America v. Mitchell[3], 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947), that plainly identifiable acts of political management and political campaigning on the part of federal employees may constitutionally be prohibited. 413 U.S. at 554, 93 S.Ct. at 2885.

As applied to the state level of government, the United States Supreme Court held that a state can restrict the political activities of its classified civil servants much in the same way the Hatch Act proscribes partisan political activities of federal employees. Broderick v. Oklahoma, supra. The state statute sustained in Broderick prohibited employees in the classified civil service from becoming "candidates

---

3. The Supreme Court in Mitchell, supra, upheld the constitutionality of the Hatch Act which prohibited to a certain extent, political activities of federal employees.

for nomination or election to any paid public office." 413 at 606, 93 S.Ct. at 2912. In Otten v. Shicker, supra, the United States Court of Appeals for the 8th Circuit refused to enjoin a St. Louis Police Department regulation that prohibited employees of the department from running for elective public office. The court in Otten held that the regulation did not impermissibly infringe Officer Otten's First Amendment rights. 655 F.2d at 145.

The most persuasive case that provides this court with guidance is the United States District Court case of Adams v. Supreme Court of Pennsylvania, 502 F.Supp. 1282 (M.D., Pa. 1980). In Adams, the court held that a Pennsylvania "resign to run" law was not a violation of the First Amendment right to engage in political activity. Id. at 1292. Specifically, in Adams, supra, plaintiff was challenging the constitutionality of Rule 15(E) of the Governing Standards of Conduct for District Justices (42 Pa.S. 1986 Supp.) which states:

"A district justice shall resign his office when he becomes a candidate either in a party primary or in a general election for a nonjudicial office." Plaintiff in Adams, supra, was a district justice who announced his intention to run for Congress. Ultimately, because of Rule 15(E) Adams was forced to forfeit his position as a district justice. Adams brought suit and argued that the provision was unconstitutional unless defendants could demonstrate that the "resign to run" rule furthered a compelling state interest. Id. at 1292. The district court in Adams disagreed and stated:

"The issue is not whether a compelling state interest supports the relevant law. *Rather the proper test involves a balance between the individual's First Amendment rights and the interests the government has at stake.* Broderick v. Oklahoma, 413

U.S. 601, 606, 93 S.Ct. 2908, 2912, 37 L.Ed.2d 796 (1973) (state civil service); United States Civil Service Commission v. National Association of Letter Carriers, 413 U.S. 548, 564, 93 S.Ct. 2880, 2889, 37 L.Ed.2d 796 (1973) (federal civil service); Pickering v. Board of Education, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1969) (public school teachers). . ." Id. (Emphasis added.) The court in Adams continued and asserted:

"It must be conceded that *resign to run* laws place substantial burdens on the potential candidates right to seek office. Yet the *chilling* effect of these provisions should not be exaggerated since they do not reach a wide variety of other activities protected by the First Amendment guarantee of free speech. The statutes moreover serve important state interests." Id.

Clearly, the court's holding in Adams, supra, 502 F.Supp. at 1292, demonstrates that the test to be used in analyzing a government's "right to run" rule is not that the government demonstrate a compelling interest, but rather the test is reduced to one of balancing the interests of the individual with those of the government. This is not to say that the government must not set forth any interest. The government must set forth important and valid state interests. However, this is an obviously more lenient restriction than the compelling governmental interest test formerly embraced by some state and federal courts.

In Letter Carriers, supra, the court noted:

"The problem in any case is to arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interests of the [government], as an employer, and in promoting the efficiency of the public services it performs through its employees." 413 U.S.

at 564, 93 S.Ct. at 2890 (quoting Pickering v. Board of Education, supra, 319 U.S. at 568, 88 S.Ct at 1734.). Further, in Otten, the court held that the police department may determine that the political restrictions it imposes ". . . *serves several valid and important state reasons.*" Otten, 655 F.2d at 144. (Emphasis added.) In Otten, supra, 655 F.2d at 145, the department sought to strike a balance favorable to both itself and its employees. The court in Otten further stated: "while it [the Department] is free to formulate a rule more favorable to the members of the [police] Force, we feel that the present rule is sustainable by the important governmental interests that the Department has found it serves." Id.

Applying the above mentioned case law to the facts sub judice this court finds that special order no. 1-86 is valid and constitutional. The City of Erie's special order furthers important and valid government interests. These interests were set forth by the city's counsel in both oral and written argument and include:

1. To keep politics out of the department thereby furthering the departmental goal of ensuring the impartial enforcement of the law. It is vital that police officers perform their job in an impartial manner free from political bias or favoritism and solely on merit.[4]

---

4. This reason as set forth in principle by the City of Erie is certainly laudable; however, in fact, it is obvious to this Court that if such is true then a regulation of this type should have been in effect many years ago. Further, such regulation should not only apply to prohibition or restriction of police officers campaigning for themselves but also as to their campaigning for others, especially their superiors, including the Mayor of the City of Erie.

2. To avoid the appearance of impropriety. As a public servant it is important that the police officer be viewed favorably by the constituents he serves — the general public.

These interests have been upheld by other courts as sufficient to support the constitutionality of similar "resign to run" rules. In Letter Carriers, supra, the Supreme Court justified the Hatch Act and the "resign to run" rule as applied to Federal Civil Servants and rationalized that it was important that the Federal employees enforce the law and execute the programs of the government without bias or favoritism for or against any political party or group or the members thereof. 413 U.S. at 565, 93 S.Ct. at 2890. It was this precise rationale that the court in Otten, supra, relied upon to uphold the St Louis Police Department regulation (7.010A) prohibiting its members from running for elective office. In Otten the court stated that:

"The department may determine that political restrictions of the kind involved in this case serve several valid and important state interests, including attracting qualified persons through guaranteeing job security free from the political arena and *ensuring the impartial execution of the laws.* United States Civil Service Commission v. National Association of Letter Carriers, supra, 413 U.S. at 565, 93 S.Ct. at 2890." 655 F.2d at 144. (Emphasis added.)

Another important and valid reason set forth in Letter Carriers, supra, that the court used in its consideration to uphold the "right to run" rule was to avoid the appearance of impropriety by government employees. The court stated:

". . . it is not only important that the government and its employees in fact avoid practicing political justice, but *it is also critical that they appear to the public to be avoiding it,* if confidence in the system

of representative government is not to be eroded to a disastrous extent." Letter Carriers, supra, 413 U.S. at 565, 93 S.Ct. at 2890. (Emphasis supplied.) This court can certainly appreciate the interest of the City of Erie Police Department in having its members avoid the appearance of impropriety, as servants of the public, by restricting their political activity as candidates. This court agrees that to uphold and maintain the public confidence in its police department the department must avoid the appearance of impropriety which may result from political favoritism or bias.

The City of Erie has advanced valid and important interests to support special order no. 1-86. These interests are sufficient to uphold the special order and its provisions as valid and constitutional. This court notes, as did the Federal Court in Adams, supra, that "resign to run" laws place substantial burdens on a potential candidate's right to seek office. 502 F.Supp. at 1292. However, this court further agrees with the court's finding in Adams that:

"the chilling (effect) of these provisions should bot be exaggerated, since they do not reach a wide variety of other activities protected by the First Amendment guarantee of free speech. *The statutes, moreover, serve important state interests.* Id. (Emphasis added.)

The cases relied upon by plaintiff to support his assertion that the special order is unconstitutional are inapplicable to the case sub judice and provide inadequate precedent and reasonings for this court to follow.[5]

---

5. The attorney for plaintiff has cited several cases supporting his position. The relevant cases will be discussed and distinguished. However, this court will not consider "insinuations" in making its decision as plaintiff's counsel would have

Plaintiff strongly relies on such cases as DeStefano v. Wilson, 96 N.J.Super. 592, 233 A.2d 682 (1967); Kinnear v. San Francisco, 61 Cal.2d 341, 38 Cal.Rep. 631, 392 Pacific 2d 391 (1964); Bagley v. Washington Township, 65 Cal.2d 499, 55 Cal.Rep. 401, 421 Pacific 2d 409 (1966); Minielly v. State, 242 Ore. 490, 411 Pacific 2d 69 (1966), to support his position. However, these cases do not accurately reflect the current law as applied to the "resign to run" orders, and, further, they are categorically distinguishable from the facts of the case sub judice.

First, plaintiff's contingency of cases falsely relies on the now-outdated precedent of requiring a state to demonstrate a compelling interest when a government employee is restricted or prohibited from running for elective office. The test, as evidenced by the controlling case of Adams v. Supreme Court of Pennsylvania, supra, is reduced to requiring the government to demonstrate valid and important interests. A balancing test is now the standard. The legal application of this test must take into consideration the interests of the individual and the infringement upon his First Amendment rights, and the opposing governmental interests at stake. See Broderick v. Oklahoma, supra, 413 U.S. at 606, 93 S.Ct. at 2912; United States Civil Service Commission v. National Association of Letter Carriers, supra, 413 U.S. at 564, 93 S.Ct. at 2889; Pickering v. Board of Education, supra, 391 U.S. at 568, 88 S.Ct. at 1734; Otten v. Shicker, supra, 655 F.2d

---

this court do based on plaintiff's interpretation of the reasoning allegedly set forth in City of Philadelphia v. Cohen, 814 Pa. Commw. 200, 479 A.2d 32 (1974); (see plaintiff's brief in support of plaintiff's action for declaration judgment at p. 7.)

145; and Adams v. Supreme Court of Pennsylvania, supra, 502 F.Supp. at 1292.

As stated previously, this court finds that the City of Erie has set forth valid and important reasons sustaining the constitutionality of special order no. 1-86, particularly when weighed against Officer Robarts' First Amendment rights to run for elective office.

Second, this court also finds plaintiff's cases are factually distinguishable on the ground that these cases provide for a *total prohibition* of government employees from running for public office. Although total prohibition statutes such as the "resign to run" rule in Adams, supra, or Broderick, supra, have been upheld as constitutional, special order no. 1-86 is a less intrusive rule because it provides an alternative to resigning completely from the police force. Special order no. 1-86 provides that the police officer may choose to either resign *or* request to take a leave of absence. By offering the employee a choice to resign or to request a leave of absence, special order no. 1-86 infringes less upon the officer's First Amendment right to run for public office than the above said total prohibition statutes do. Quite obvious is the fact that the special order is not as intrusive of an infringement as would be an order that solely provided for immediate resignation upon the announcement by the employee of his candidacy for elective office, such as the rules embodied in DeStefano, supra, Bagley, supra, Kinnear, supra, and Minielly, supra, require. Those cases further go on to note that had the government asserted compelling interests, the "resign to run" rule would have been upheld. This court need not speculate whether the City of Erie has set forth sufficiently compelling interests to support validation of special order no. 1-86 since it is obvious from the applicable

case law that the court is not required to apply such a strict standard.

Plaintiff Robarts argues in the alternative that special order no. 1-86 is unconstitutional and may not be enforced because it is vague and overbroad. This argument is entirely without merit.

First, special order no. 1-86 is not void for vagueness. The appropriate standard to apply to the special order when determining if it is void for vagueness was set forth in Broderick, supra. The court in Broderick stated: "In determining if a statute is unconstitutionally vague, the test is to determine whether 'men of common intelligence must necessarily guess at its meaning'." 413 U.S. at 607, 93 S.Ct. at 2913 (quoting Connally v. General Construction Company, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926)); see Grayned v. City of Rockford, 408 U.S. 104, 108-114, 92 S. Ct. 2294, 2298, 2302, 33 L.Ed.2d 222 (1972). The special order involved in the case before this court explicitly states which types of political activity are permissible, and which are not. The special order states that a departmental employee may participate in candidacy for elective office at which time he must *either* submit a letter of resignation or submit a request of a leave of absence to the Chief of Police. (See special order no. 1-86 reproduced in full at footnote 1, infra.) Special order no. 1-86 also states that the officer may not "circulate any election petition while on scheduled duty performing police services, nor shall he engage in or participate in any policial activity during on duty hours." (See footnote 1, infra.) Clearly, Officer Robarts does not have to guess at the meaning of special order no. 1-86 because it states the political activity an officer may or may not participate in. Further, this court recognizes that,

"There are limitations in the English language with respect to being both specific and manageably brief, and . . . although the prohibitions may not satisfy those intent on finding fault at any cost, they are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest. Otten, supra, 655 F.2d at 145 (quoting United States Civil Service Commission v. National Association of Letter Carriers, supra, 413 U.S. 578-579, 93 S.Ct. at 2897). This court finds that the ordinary person could sufficiently understand special order no. 1-86 and that Officer Robarts could comply with it without sacrifice to the public interest. Consequently, this court holds that special order no. 1-86 is not impermissibly vague.

Second, this court finds that when adjudged under the appropriate standards special order no. 1-86 is not overbroad and thus plaintiff's overbreadth argument must fail. In Broderick, supra, the court stated: "Where conduct and not merely speech is involved we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." 413 U.S. at 615, 93 S.Ct. at 2917. Thus, where governmental authority proscribes certain types of conduct and not "pure speech", its regulation will not be struck down as facially unconstitutional unless the statute is "substantially" overbroad. Otten v. Shicker, supra, 655 F.2d at 145; see Broderick v. Oklahoma, supra, 413 U.S. at 615, 93 S.Ct. at 2917. This court, therefore, finds that the special order is not substantially overbroad because of the order's obvious regulation of conduct and not "pure speech". This court further agrees with the Federal Court's statement in Otten that "analysis of its potential overbreadth and other factual context

on a case by case basis is the more appropriate method of dealing with its hypothetical infirmities." 655 F.2d at 145-146; see Broderick v. Oklahoma, supra, 413 U.S. at 615-616, 93 S.Ct. at 2917-2918.

For the reasons set forth herein, this court finds that special order no. 1-86 as issued by the City of Erie, Bureau of Police, does not unconstitutionally infringe upon plaintiff's First Amendment right to run for elective public office. Therefore, special order no. 1-86 is declared constitutional and must be upheld.

## ORDER OF COURT

And now, this October 17, 1986, for the foregoing reasons, it is ordered, adjudged and decreed that special order no. 1-86 as issued by the City of Erie, Bureau of Police, does not unconstitutionally infringe upon plaintiff's First Amendment right to run for elective public office, and, therefore, special order no. 1-86 is declared constitutional and is hereby upheld.